STATE of Maine

v.

**Rodney R. CLOUKEY.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 1984.

Decided Jan. 8, 1985.

Patricia Worth, Asst. Dist. Atty. (orally), Rockland, for plaintiff.

Logan, Kurr, Hamilton & Robinson, Harold C. Hamilton, II (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

WATHEN, Justice.

Following a jury-waived trial in the Superior Court (Knox County), defendant Rodney Cloukey appeals his conviction for operating a motor vehicle after his license had been revoked as a habitual offender. 29 M.R.S.A. § 2298 (Supp.1984–1985).[1] The sole issue on appeal arises from defendant's constitutional challenge to the police roadblock that resulted in his apprehension. We conclude that the police conduct was "reasonable" and, therefore, we deny the appeal.

I.

During the early afternoon of August 17, 1983 a deputy sheriff and a member of the

---

1. 29 M.R.S.A. § 2298 provides in relevant part:

It shall be unlawful for any person to operate any motor vehicle on a public way, as defined in Title 17–A, section 505, subsection 2, in this State while the revocation prohibiting its operation remains in effect. Any person found to be an habitual offender under this chapter, or former chapter 18, who is thereafter convicted of operating a motor vehicle in this State while the revocation prohibiting operation is in effect shall have committed a Class C crime.

Defendant had previously been declared to be a habitual offender pursuant to 29 M.R.S.A. § 2292 as a result of three convictions for operating under the influence.

Maine State Police set up a roadblock on Route 73 in St. George for the purpose of conducting a traffic safety check. Before the roadblock was established, the deputy asked for and received the permission of the Sheriff of Knox County to assist the trooper. He also informed the Sheriff of the location of the proposed roadblock. Route 73 is a rural two lane road permitting vehicular travel in both directions. The roadway leads from St. George through Spruce Head and South Thomaston and on to Rockland. According to the testimony of the deputy, "Route 73 itself is one of the stretches of road in Knox County that we have a higher rate of accidents on than any other."

The officers selected an area that they believed to be safe for roadway traffic stops. The weather was clear and dry, and the roadway was level and straight. Motorists approaching the site selected by the officers had an unobstructed view of the site for about ½ mile from one direction and 1½ miles from the other direction. The officers parked their respective cruisers on the opposite shoulders of the highway, leaving the traveled portion unobstructed. They activated both sets of "flashers" and one flashing blue light. The officers stopped motorists by standing in the road, gesturing for them to stop. The deputy testified that he stopped every vehicle that came toward him in his lane. He would approach the driver, asking for a license and registration. He would then explain that he was conducting a traffic safety check. The check consisted of "looking at the license and registration, checking the inspection sticker, the tires, lights" and occasionally the directional signals. The deputy estimated that he performed thirty checks in one-half hour. The state police officer performed similar checks in the other lane of the highway.

Defendant Rodney Cloukey was stopped by the deputy while driving a motor vehicle. The deputy explained that he was conducting a safety check, and asked to see defendant's license and registration. When defendant was unable to produce a license, the deputy asked him to pull over. After running a license check and finding that defendant's license had been suspended, the deputy placed defendant under arrest.

Prior to trial, defendant moved to suppress "any and all evidence gained as a result of the illegal and unconstitutional stop and search of his automobile." In denying the motion, the Superior Court balanced the need for the seizure against the intrusion on the defendant and found that the license and registration stop was "reasonable" under the Fourth Amendment of the United States Constitution. The issue is now before us on appeal.

## II.

At the outset it should be observed that the present case involves a systematic, roadblock stop of all vehicles rather than a roving stop of one vehicle. The roadblock was conducted for the purpose of checking the operators' license and the registration, inspection sticker, and certain exterior safety features of all vehicles passing through an area having a high accident rate. These facts are of paramount importance because neither this Court nor the United States Supreme Court has ruled on the precise issue presented by this case. In *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) the Supreme Court affirmed an order suppressing evidence and held that the roving stop of a motorist, without at least an articulable and reasonable suspicion that a violation might be occurring, violates the Fourth Amendment. By way of dicta the Court went on to state:

This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.

*Id.* at 663, 99 S.Ct. at 1401 (footnote omitted). The Supreme Court was not required by the facts of *Prouse* to establish any meaningful guidelines regarding roadblock stops and therefore the issue remains in doubt.

■ Analysis begins with the fundamental question whether the action of the police officers in conducting the roadblock was "reasonable" under the Fourth Amendment. In this area of the law, reasonableness requires that the need to temporarily seize motorists be balanced against the invasion that the seizure entails. *See Camara v. Municipal Court,* 387 U.S. 523, 536–537, 87 S.Ct. 1727, 1734–35, 18 L.Ed.2d 930 (1967). Although *Prouse* did not speak directly to the mechanics of an acceptable roadblock, the decision is helpful, at least by way of contrast. In *Prouse,* a police officer stopped a vehicle in the evening hours and seized marijuana in plain view on the car floor. The defendant, an occupant of the vehicle, was arrested for illegal possession of a controlled substance. The arresting officer testified that he made the stop for the purpose of checking the driver's license and registration and described the stop as routine. The officer's decision, however, was explained in the following terms: "I saw the car in the area and wasn't answering any complaints, so I decided to pull them off." *Prouse* at 650–651, 99 S.Ct. at 1394. It would be difficult to describe a more capricious and arbitrary basis for detention than the fact that the officer had nothing better to do. The Supreme Court first restated the balancing test as follows:

> Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.

*Prouse* at 654, 99 S.Ct. at 1396. Considering the particular facts before it, the Court found the intrusion to outweigh the governmental interest supporting a roving stop.

After *Prouse,* many courts have been called upon to consider whether roadblocks are permissible. Two federal courts of appeal have had little trouble upholding specific roadblocks for a license and registration check. In *United States v. Miller,* 608 F.2d 1089 (5th Cir.1979), *cert. denied,* 456 U.S. 964, 102 S.Ct. 2043, 2044, 72 L.Ed.2d 489 (1982) officers in Texas set up a license and registration checkpoint adjacent to a Border Patrol checkpoint. All cars traveling in either direction were stopped. The court noted that this was "a procedure apparently approved in *Delaware v. Prouse.*" *Id.* at 1093. In *United States v. Prichard,* 645 F.2d 854 (10th Cir.1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981), a roadcheck conducted in New Mexico was upheld even though the officers exercised some discretion in deciding which cars to stop. As traffic became congested, the officers waved cars through until the pile-up had disappeared. The court discussed the roadblock in the following terms:

> In our view, the roadblock stop of the Ford Bronco does not run afoul of the rule of *Prouse.* While this may not have been a "100% roadblock" of the type referred to in *Prouse,* it is nonetheless a long way from the selective, single car stop denounced in *Prouse.* In the instant case, the New Mexico state police were attempting to stop all westbound traffic on an interstate highway, insofar as was humanly possible. The decision not to stop trucks was reasonable under the circumstances, because, presumably, they had all been stopped at a port of entry. The purpose of the roadblock, i.e., to check drivers' licenses and car registrations, was a legitimate one. If, in the process of so doing, the officers saw evidence of other crimes, they had the right to take reasonable investigative steps and were not required to close their eyes. *See United States v. Merryman,* 630 F.2d 780, 782–85 (10th Cir.1980). Furthermore, allowing all the stopped cars through when traffic became congested was also reasonable and, in our

view, non-violative of the rule of *Prouse*. In sum, the roadblock stop of the Ford Bronco was, under the described circumstances, constitutional.

645 F.2d at 856–857.

The state courts that have dealt with roadblocks have generally read the dicta in *Prouse* more narrowly. Of the seven cases involving temporary roadblocks, three have found a Fourth Amendment violation: *State ex rel. Ekstrom v. Justice Court of State*, 136 Ariz. 1, 663 P.2d 992 (1983); *Commonwealth v. McGeoghegan*, 389 Mass. 137, 449 N.E.2d 349 (1983); *State v. Olgaard*, 248 N.W.2d 392 (S.D.1976). Four cases have found no violation: *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983); *Little v. State*, 300 Md. 485, 479 A.2d 903 (1984); *State v. Coccomo*, 177 N.J.Super. 575, 427 A.2d 131 (1980); *People v. Scott*, 53 U.S.L.W. 2300 (N.Y.1984). Almost without exception, the state courts have focussed on the following language from *Prouse:*

> Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against "an objective standard," whether this be probable cause or a less stringent test. In those situations in which the balance of interests precludes insistence upon "some quantum of individualized suspicion," other safeguards are generally relied upon to assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field," *Camara v. Municipal Court*, 387 U.S., at 532, 87 S.Ct., at 1733. *See id.*, at 534–535, 87 S.Ct. at 1733–1734; *Marshall v. Barlow's, Inc., supra*, 436 U.S. at [307] 320–321, 98 S.Ct. at [1816] 1824–1825 [56 L.Ed.2d 305]; *United States v. United States District Court*, 407 U.S. 297, 322–323, 92 S.Ct. 2125, 2139, 32 L.Ed.2d 752 (1972) (requiring warrants).

440 U.S. at 654–655, 99 S.Ct. at 1396 (footnotes omitted). From this language and the analogy provided by decisions involving immigration checkpoints, *see e.g., United States v. Martinez Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), the courts have extrapolated a number of factors to apply and balance in reaching a decision in a particular case. The factors listed in *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983) are representative:

> (1) The degree of discretion, if any, left to the officer in the field; (2) the location designated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (6) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test.

234 Kan. at 541, 673 P.2d at 1185.

■ In the case before us defendant argues that the roadblock is unconstitutional solely because "there was no decision made by policy making supervisory officers either as to the necessity for and reasonableness of the road block, or to the procedures to be used in setting up the road block." The record reveals only a modest amount of involvement by the Sheriff of Knox County. His permission was requested and he was informed of the location of the roadblock by his deputy. We are not persuaded, however, that the relative absence of supervisory personnel in the planning stages of the roadblock renders it constitutionally unreasonable.

■ We believe that the State of Maine has a vital interest in protecting its citizens from persons who have either not qualified to drive or who have been declared incompetent to drive because of a record of serious driving offenses. This case does not

involve a sobriety stop. There may be many effective ways of detecting a drunken driver without intruding on the rights of the citizen. A trained eye can readily spot erratic operation. The unlicensed driver, however, displays no observable characteristics. If a license check under any circumstances is unreasonable, then in most instances, public protection must await the commission of another offense. Although the state's interest would not sustain the highly intrusive roving stop of a single vehicle, it does sustain the less intrusive police practice employed in this case.

For purposes of the Fourth Amendment, there is a significant difference in fact between a roving stop and a roadblock. Common experience alone suggests that it is far more intrusive, alarming, and unsettling to be picked out of a line of traffic and stopped, as opposed to being stopped as part of a line of traffic. This common-sense proposition has been recognized by the Supreme Court and forms the rational basis for the roadblock exception. In *Prouse,* the Court observed that:

> For Fourth Amendment purposes, we also see insufficient resemblance between sporadic and random stops of individual vehicles making their way through city traffic and those occasioned by roadblocks where all vehicles are brought to a halt or to a near halt, and all are subjected to a show of the police power of the community. 'At traffic checkpoints the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion.'

*Prouse* 440 U.S. at 657, 99 S.Ct. at 1397 (citations omitted). On balance we conclude that the state's interest, under these particular circumstances, sustains the minimal intrusion inflicted on the traveling public.

We are fully cognizant of the fact that a license checkpoint can be used as a subterfuge. Those state courts that have emphasized the importance of the involvement of supervisory personnel in planning a roadblock, undoubtedly had that fact in mind. Although we recognize it is preferable, we are not persuaded that written policy and supervision is essential. Subterfuge can occur even in the presence of such factors. The justice below found that the purpose of the roadblock was as stated by the officer. The facts and circumstances are highly corroborative of that finding.

The entry must be:

Judgment affirmed.

All concurring.