**STATE of Maine**

v.

**Everett E. LEIGHTON.**

Supreme Judicial Court of Maine.

Argued Nov. 1, 1988.

Decided Dec. 7, 1988.

Michael Povich, Dist. Atty., Gail Marshall (orally), Asst. Dist. Atty., Patrick C. Larsen, Law Student, Ellsworth, for plaintiff.

Earle S. Tyler (orally), Milbridge, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD and HORNBY, JJ.

McKUSICK, Chief Justice.

For the first time we here address the constitutionality of a roadblock set up by law enforcement officers to apprehend drunk drivers. At about 1:00 a.m. on Sunday, July 19, 1987, defendant Everett E. Leighton was stopped at a roadblock on U.S. Route 1 in the town of Hancock and arrested for operating under the influence (OUI). Defendant entered a conditional guilty plea, M.R.Crim.P. 11(a)(2), in the Superior Court (Hancock County; *Beaulieu, J.*) in order to obtain appellate review of the denial by the District Court (Ellsworth; *Bradley, J.*) of his motions to dismiss the complaint and to suppress evidence. The sole issue on appeal is whether the roadblock violated the Fourth Amendment to the United States Constitution. We hold that the stop here was not an unreasonable intrusion on defendant's Fourth Amendment interests, and we therefore affirm his conviction.

The Hancock County Sheriff's Department set up the roadblock involved in this case for the purpose of checking for OUI drivers and for alcohol in vehicles. The roadblock, sometimes called a "sobriety checkpoint," was set up just after midnight of a midsummer Saturday on U.S. Route 1 near its intersection with Washington Junction Road. Although there were no written guidelines, the sheriff's department had previously established oral procedures for conducting roadblocks. The sheriff him-

self, with the help of the patrol supervisor, directed the half dozen officers conducting the operation. The roadblock site provided ample room in the paved breakdown lane for police cars and for vehicles whose operators were suspected of OUI to pull completely out of the travel lanes.

The officers at the roadblock stopped all vehicles, with the stops lasting under a minute unless the officer detected the odor of alcohol or saw open containers of alcohol in the vehicle. The officers told all drivers the reason for the stop. For safety purposes, the officers wore reflective clothing, orange cones and flares were placed in the roadway, and two police cruisers were parked off the road in the breakdown lane with their blue lights flashing and their alley lights on to light the roadway. The public had no other advance notice of the roadblock.

When Leighton was stopped at the Route 1 roadblock, the police officer detected the odor of alcohol and instructed Leighton to drive into the breakdown lane. The officer had him perform two field sobriety tests and then administered a pre-arrest breath test. Leighton was then arrested for OUI and taken to the Hancock County jail. On defendant's pretrial motions to dismiss the complaint and to suppress all evidence obtained as a result of the stop at the "OUI roadblock," the District Court, balancing "the degree of intrusion on an individual's privacy against the strength of the public need for the intrusion," found that the stop did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. We agree.

Neither this court nor the United States Supreme Court[1] has ruled squarely on the constitutionality of OUI roadblocks, but the Supreme Court's decision in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), provides a starting point for analysis. *Prouse* holds that a roving stop of one motorist to check his license and registration violates the Fourth Amendment absent reasonable suspicion focusing upon that motorist. *Id.* at 663, 99 S.Ct. at 1401. Stating that even a brief stop of an automobile constitutes a seizure for Fourth Amendment purposes, *id.* at 653, 99 S.Ct. at 1396, *Prouse* holds that in each case the determination whether a stop constitutes a constitutionally unreasonable seizure requires "balancing [the] intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests." *Id.* at 654, 99 S.Ct. at 1396.

Although *Prouse* held the roving stop unconstitutional, the opinion notes that:

> This holding does not preclude the ... States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.

*Id.* at 663, 99 S.Ct. at 1401 (footnote omitted). *See also United States v. Martinez–Fuerte*, 428 U.S. 543, 545, 96 S.Ct. 3074, 3077, 49 L.Ed.2d 1116 (1976) (vehicle may be stopped briefly at a fixed roadblock to check for illegal aliens). Thus, although the Supreme Court has not directly addressed the question now before us, its decisions suggest that OUI roadblocks are constitutional provided that officer discretion is limited, the intrusion on individual privacy interests is minimized, and a strong governmental interest is promoted.

Using the rough guidelines set out in *Prouse*, we recently addressed the reasonableness under the Fourth Amendment of a traffic safety roadblock set up to check among other things licenses, registrations, and inspection stickers. *State v. Cloukey*, 486 A.2d 143 (Me.1985). In *Cloukey* we balanced the State's interest in protecting the public from unqualified drivers against the individual motorist's interest in free-

---

1. The United States Supreme Court recently denied certiorari, 7–to–2, to a California case upholding the constitutionality of an OUI roadblock conducted under appropriate conditions. *Richard T. v. California*, — U.S. —, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988), *denying cert., In re Richard T.*, unpublished opinion (Cal.Ct. of Appeals, 4 district, March 10, 1988) transferred from, — Cal.3d —, 750 P.2d 297, 244 Cal. Rptr. 655 (1988).

dom from intrusion and found that a brief stop at the regulatory roadblock there involved did not violate the Fourth Amendment. *Id.* at 146–47. We noted that courts in other states have identified the following factors as appropriate to use in evaluating the reasonableness of a roadblock stop:

(1) The degree of discretion, if any, left to the officer in the field; (2) the location designated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (6) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test.

*Id.* at 146 (quoting *State v. Deskins,* 234 Kan. 529, 541, 673 P.2d 1174, 1185 (1983)). *See also People v. Bartley,* 109 Ill.2d 273, 93 Ill.Dec. 347, 486 N.E.2d 880 (1985), *cert. denied,* 475 U.S. 1068, 106 S.Ct. 1384, 89 L.Ed.2d 608 (1986); *Commonwealth v. McGeoghegan,* 389 Mass. 137, 449 N.E.2d 349 (1983). Courts of other jurisdictions, which generally have upheld the constitutionality of OUI roadblocks on a balancing analysis, have "based [their decisions] in large measure on the lower expectation of privacy traditionally accorded to the motoring public." *Commonwealth v. Shields,* 402 Mass. 162, 167, 521 N.E.2d 987, 991 (1988).

We do not find the roadblock involved in this case to be constitutionally unreasonable given the minimal intrusion on Fourth Amendment interests and the importance of the public interests at stake. That drunk drivers on our highways pose a serious threat to public safety cannot be disputed. *See South Dakota v. Neville,* 459 U.S. 553, 558, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983); *People v. Bartley,* 109 Ill.2d at 285, 93 Ill.Dec. at 352–53, 486 N.E.2d at 885–86.[2] Indeed, the legislature at nearly every regular session has strengthened the drunk driving laws in Maine, thereby demonstrating the importance to Maine citizens of fighting the drunk-driving problem. *See, e.g.,* P.L.1987, ch. 791, §§ 18–21 (eff. May 11, 1988), codified at 29 M.R.S.A. § 1312–B (Pamph.1988). The State's undeniably strong interest in protecting the public from the threat of drunk drivers on our highways amply justified the minor intrusion upon Leighton's Fourth Amendment rights.

The procedure used at this roadblock was in accordance with guidelines established in advance by supervisory personnel to ensure safety, and the sheriff himself was present to direct the operation. Driver inconvenience was minimal, with stops lasting only briefly unless the officers had reason to suspect a violation of law. The roadblock was set up at a time and a place —at the end of a summer Saturday evening and on a busy highway—where the sheriff's department could reasonably suspect OUI violations might occur. All cars were stopped, thus eliminating the officer discretion that the Supreme Court found fatal in *Prouse.* Flashing lights, orange cones, flares, and reflective clothing identified the roadblock and the officers to approaching motorists. The site was illuminated by the patrol cars' alley lights and had sufficient room in the paved breakdown lane to accommodate the patrol cars and any stopped vehicles. The officers promptly informed

---

**2.** One commentator notes the following statistics:

Drunk drivers cause an estimated 25,000 deaths, nearly one million injuries, and $5 billion in property damage annually. Lauter, *The Drunk Driving Blitz,* Nat'l L.J., Mar. 22, 1982, at 1, col. 2. It is estimated that every hour three Americans are killed, and an additional eighty are injured by intoxicated drivers. In addition, fifty percent of all Americans will be harmed by a drunken motorist during his or her lifetime. Comment, *Filling in the Blanks after* Prouse: *A New Standard for the Drinking–Driving Roadblock,* 20 Land & Water L.Rev. 241, 250 (1985).

Comment, *DWI Roadblocks: Are They Constitutional in North Carolina?,* 21 Wake Forest L.Rev. 779 n. 1 (1986).

each motorist of the purpose of the stop. In short, it is clear that the Hancock County Sheriff's Department sought to ensure safety and to minimize motorist anxiety and inconvenience.

We reject defendant's contention that the absence of written procedures, the absence of advance notice to the public, and the absence of a showing by the State that there was no better way to apprehend drunk drivers render the roadblock in this case unreasonable. Although it would be preferable for law enforcement agencies to have written procedures for the conduct of OUI roadblocks—if for no other purpose than to avert litigation of the issue—the preexisting unwritten policy of the Hancock County Sheriff's Department served the purpose of ensuring that the Route 1 roadblock was not a ruse for making the kind of random, discretionary stops of individual motorists that the Supreme Court found unconstitutional in *Prouse. See State v. Cloukey,* 486 A.2d at 147. Similarly, while advance publicity may help to deter drivers from driving while intoxicated and may reduce motorist anxiety on being stopped, it is not constitutionally required. *See Commonwealth v. McGeoghegan,* 389 Mass. at 143, 449 N.E.2d at 353. Finally, we agree with the recent decision of the Massachusetts court in *Commonwealth v. Shields,* 402 Mass. at 166, 521 N.E.2d at 990, that the question was whether the conduct that in fact occurred passed constitutional muster and that the Commonwealth therefore was not obliged to prove that all possible alternatives to a roadblock would be less effective in combating the drunk driving problem. Both the absence of advance notice to the public and the existence of less intrusive alternatives to the OUI roadblock, if there be such, are merely considerations to be taken into account in our balancing analysis. They do not constitute categorical answers to the constitutional question before the court.

In sum, we find that the roadblock involved in this case did not violate defendant's protected Fourth Amendment interests.

The entry is:

Judgment affirmed.

All concurring.