STATE of Maine

v.

Margaret McMAHON.

Supreme Judicial Court of Maine.

Argued March 14, 1989.
Decided April 24, 1989.

R. Christopher Almy, Dist. Atty. and Philip C. Worden (orally), Asst. Dist. Atty., Bangor, for the State.

Carl D. McCue (orally), Bangor, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

GLASSMAN, Justice.

Margaret McMahon appeals from the judgment of the Superior Court (Penobscot County, *Beaulieu, J.*), entered on a jury verdict finding her guilty of operating a motor vehicle while under the influence of intoxicating liquor (OUI) or while having a 0.10% or more blood-alcohol level (EBA) in violation of 29 M.R.S.A. § 1312–B (Supp. 1988).[1] McMahon argues that the District Court (Bangor, *Cox, J.*) erred in denying her motion to suppress evidence secured as a result of a stop at a roadblock, that the Superior Court committed reversible error during the trial in admitting certain evidence, and that comments in the State's closing argument require that the judgment be vacated. We disagree and affirm the judgment.

I

McMahon first argues that the roadblock violated the fourth amendment of the

---

1. 29 M.R.S.A. § 1312–B was amended after the time period relevant to this appeal and 0.08% was substituted for 0.10%. *See* P.L.1987, ch. 791.

United States Constitution and therefore the District Court erred in denying her motion to suppress all the evidence obtained after her vehicle was stopped.

After a hearing on McMahon's motion, the District Court found that the procedures employed by the Bangor Police Department in establishing the roadblock were reasonable and denied McMahon's motion. This decision must stand if there is any competent evidence in the record to support it. *State v. Reeves*, 499 A.2d 130, 133 (Me.1985). In *State v. Cloukey*, 486 A.2d 143 (Me.1985), and *State v. Leighton*, 551 A.2d 116 (Me.1988), we followed *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979), and tested the constitutionality of a roadblock by " 'balancing [the] intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests.' " *Leighton*, 551 A.2d at 117 (quoting *Prouse*, 440 U.S. at 654, 99 S.Ct. at 1396); *see also Cloukey*, 486 A.2d at 147. In support of a traffic safety roadblock, we recognized the vital interest the State has in protecting its citizens from persons not qualified to drive or, because of a record of serious driving offenses, declared incompetent to drive. *See Cloukey*, 486 A.2d at 146–47. We also have recognized the vital interest the State has in protecting the public from the threat of drunk drivers on our highways. *Leighton*, 551 A.2d at 118. We noted the factors used in other states to evaluate the reasonableness of a roadblock stop:

"(1) The degree of discretion, if any, left to the officer in the field; (2) the location designated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (6) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test."

*Id.* (quoting *Cloukey*, 486 A.2d at 146 (quoting *State v. Deskins*, 234 Kan. 529, 541, 673 P.2d 1174, 1185 (1983))).

The record reflects that the roadblock was set up by the Bangor Police Department on a straight section of Finson Road between 10:30 p.m. until shortly after midnight for the purposes of checking for defects in vehicles and motor vehicle violations, including checking for OUI drivers. The roadblock followed unwritten procedures established by the Chief of Police and verbally communicated to all involved officers. The site was illuminated by the flashing blue lights of three or four police cars and the officers wore orange vests. Patrol Sergeant Cox was supervising the roadblock. He directed the first four cars that approached the roadblock into an area separated by orange safety cones from the traveled section of the road. Each vehicle was immediately approached by an officer who informed the operator of the purpose of the roadblock and requested the operator's license and the registration of the vehicle. The detention lasted one to two minutes. If a driver was suspected of committing a motor vehicle violation, he would be directed to drive his vehicle to an area completely separated from any traveled portion of the road where further investigation would continue. While any car was in the coned-off area, Cox would direct all other traffic around the roadblock. When the coned-off area was free of vehicles, the next four vehicles approaching the roadblock would be directed into that area. Neither Cox nor any of the other involved officers had any discretion to determine which cars would be directed into the coned-off area and stopped. *See Delaware v. Prouse*, 440 U.S. at 663, 99 S.Ct. at 1401 (danger of unbridled discretion of police officers in spot checking vehicles). It is clear that the procedures followed by the police officers allowed the minimal intrusion on fourth amendment interests while seeking to ensure safety and minimize anxiety and inconvenience to the motorist. For the reasons we set forth in *State v. Leighton*, 551 A.2d at 119, we reject McMa-

hon's contention that the absence of written procedures, of advance notice to the public and of a showing by the State that there was no better way to apprehend an OUI driver renders this roadblock unreasonable. Because the roadblock did not violate McMahon's protected fourth amendment interest, her motion to suppress evidence secured as a result of the roadblock was properly denied by the District Court.

## II

■ Without objection by McMahon, the State introduced evidence of the result of the intoxilyzer test administered to her. She now contends that the test which was administered approximately 30 minutes after she was stopped was inaccurate and therefore should not have been admitted. She bases this contention on her own testimony that her last consumption of alcohol had been immediately preceding the five mile drive to the point of the stop and that of Dr. Young, a forensic chemist, that under those circumstances her blood alcohol content was rising during the period of time that elapsed between the stop and the administration of the intoxilyzer test. We find no error in the admission of the test result. We have previously stated that "[t]he lapse of time, without any evidence of intervening ingestion of alcohol, does not render the test result inadmissible." *State v. Brown,* 488 A.2d 939, 941 (Me. 1985). The weight to be given the test result in view of all of the evidence lies within the province of the jury. *See State v. Tribou,* 488 A.2d 472, 476 (Me.1985).

## III

■ McMahon next contends that over her general objection the trial court erroneously admitted, through the State's cross-examination of McMahon's expert witness, evidence of a California study that compared the results of intoxilyzer and blood tests. She argues that the evidence was inadmissible hearsay because a proper foundation was not laid for its introduction. In the first instance, we note that since only a general objection was made to the introduction of the challenged testimony, our review of the record is for obvious error affecting the substantial rights of McMahon. *See State v. Flood,* 408 A.2d 1295, 1298–99 (Me.1979); *State v. Kelley,* 357 A.2d 890, 894 (Me.1976), *cited in* R. Field & P. Murray, *Maine Evidence* § 103.2, at 7 & n. 12 (1987) ("A mere general objection, if *overruled,* preserves nothing for review on appeal unless it clearly appears that the evidence was not admissible for any purpose whatsoever.") (emphasis in original); *see also* M.R.Crim.P. 52(b).

The record reflects that by direct examination of an expert witness McMahon introduced evidence that the intoxilyzer test had a margin of error of approximately plus or minus .02% and that the reading of .10% blood alcohol resulting from the intoxilyzer test administered to her could be actually .08% to .12% when considered in light of this margin of error. On cross-examination, the State questioned the expert regarding a 1974 study by the California State Department of Health that compared the results of intoxilyzer and blood tests. That study concluded that 90% of the time the intoxilyzer test indicated a lower percentage of alcohol in the blood than did the blood test. We agree with McMahon that the evidence of the California study was hearsay and the State by failing to establish that the study was authoritative did not meet the requirements for its admission as set forth in M.R.Evid. 803(18) (published treatise, periodical, or pamphlet on medicine or other science or art, called to attention of expert witness upon cross-examination not excluded by hearsay rule if established as a reliable authority by testimony or admission of witness or by other expert testimony or by judicial notice). *See* R. Field & P. Murray, *supra* at § 803.18. The record in this case, however, reflects other substantial evidence supporting the offense charged. Officer Roach testified that at the time of the stop McMahon's breath smelled of alcohol, her eyes were red and glassy, she was unsteady on her feet and did not pass the field tests administered. He also testified that pursuant to established procedures he had administered two intoxilyzer tests on McMahon from which he had readings of .103% and .105%; the two readings were added together and divided by two with the third decimal dropped from the resulting average

of .104%. In view of these circumstances, we hold that the probable effect upon the jury of the inadmissible evidence received at trial without objection was not " 'a seriously prejudicial error tending to produce manifest injustice.' " *See State v. True,* 438 A.2d 460, 467 (Me.1981) (quoting *State v. Baker,* 409 A.2d 216, 219 (Me.1979)).

## IV

Contrary to McMahon's next contention, the record discloses that a sufficient foundation was laid by the State for the admission on cross-examination of Dr. Young's opinion as to the amount of alcohol that would have been consumed by McMahon to have .10% of alcohol in her blood. *See* M.R.Evid. 703 (facts or data in particular case upon which expert bases opinion may be those perceived or made known to him at or before the hearing); *see also* M.R. Evid. 705 (expert may testify in terms of opinion and give reasons therefor without disclosure of underlying facts or data); *State v. Mylon,* 462 A.2d 1184, 1187 (Me. 1983) (on rebuttal expert allowed to give opinion contradicting defendant's testimony that he had nothing to drink after 6:00 p.m. the evening of collision).

Our review of the record discloses that McMahon's final contention that the misconduct of the State in its summation to the jury requires that the judgment be vacated is without merit.

The entry is: Judgment affirmed.

All concurring.