**STATE of Maine**

**v.**

**Clement D'ANGELO.**

Supreme Judicial Court of Maine.

Argued Oct. 28, 1991.

Decided Feb. 28, 1992.

R. Christopher Almy, Dist. Atty., James Aucoin (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Daniel G. Aiken (orally), Aiken & Aiken, Lincoln, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

The State appeals from a judgment of the Superior Court (Penobscot County, *Browne, A.R.J.*) reversing the denial of defendant Clement D'Angelo's motion to suppress and vacating the judgment of the District Court (Millinocket, *Calkins, C.J.*) entered on D'Angelo's conditional guilty plea for operating a motor vehicle while under the influence of intoxicating liquor. 29 M.R.S.A. § 1312–B (Supp.1989). We vacate the judgment of the Superior Court and reinstate the District Court's judgment.

At about 11:00 p.m. on June 2, 1990, the Millinocket Police Department set up an OUI roadblock in a residential area on Bates Street near its intersection with Bowdoin Street. The roadblock was conducted pursuant to the written policy of the police department and was approved by the Chief of Police. The roadblock was highly visible, illuminated by cones, reflecting triangles and two police cruisers with their blue lights on, and had been announced on the radio. The traffic was being stopped in both directions by four police officers stationed at the roadblock. In addition, an unmarked police cruiser, operated by Sergeant Budge, was used as a "chase car" to stop and check anyone who attempted to avoid the roadblock. There was no established policy or standard for determining whether an individual was attempting to avoid the roadblock.

Sergeant Budge saw D'Angelo's vehicle turn into a residential driveway about 75 yards from the checkpoint. Budge stated that although he did not know all the residents of the two-family home, he knew one of the families and had never seen that vehicle parked in the driveway. After pulling into the driveway, the vehicle's lights were turned off and the three occupants turned their heads to look at the roadblock. None of the occupants left the vehicle. After approximately 30 seconds of observing the vehicle and the occupants, Sergeant Budge pulled up behind D'Angelo's vehicle, got out of his cruiser and approached the car. He observed that D'Angelo appeared intoxicated and asked him for proper identification and to perform certain sobriety tests. When D'Angelo failed some of these tests, Sergeant Budge arrested him for OUI.

After a hearing, the District Court denied D'Angelo's motion to suppress evidence obtained after the stop. Pursuant to M.R.Crim.P. 11(a)(2), the District Court entered a judgment on D'Angelo's written conditional guilty plea, and D'Angelo appealed to the Superior Court. After a hearing, the Superior Court reversed the District Court's decision to deny the motion to suppress, vacated the judgment and remanded the case to the District Court to allow D'Angelo to withdraw his guilty plea. *See* M.R.Crim.P. 11(a)(2). The State now appeals.

The constitutionality of police roadblocks to detect intoxicated motorists has been upheld by the United States Supreme Court and by this Court. *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110

S.Ct. 2481, 110 L.Ed.2d 412 (1990); *State v. Leighton,* 551 A.2d 116 (Me.1988). This Court has also addressed the propriety of investigative stops of vehicles in the vicinity of such a roadblock. We have stated repeatedly and unequivocally that an officer must have a "reasonable and articulable suspicion" that the vehicle's occupants were engaged in criminal activity. *State v. Powell,* 591 A.2d 1306, 1308 (Me.1991); *State v. Patterson,* 582 A.2d 1204, 1206 (Me.1990). This standard is met only where "specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant that intrusion." *State v. Griffin,* 459 A.2d 1086, 1089 (Me.1983), quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

Two recent cases provide the appropriate framework for analyzing this one. In *State v. Powell,* 591 A.2d 1306, the trial court had found that no "reasonable and articulable suspicion" arose from the officer's observation of a vehicle turning around 700 yards before the roadblock. We held that because it was supportable by the facts, the finding could not be reversed on appeal; we explicitly reserved the question, "whether avoidance of a roadblock may give rise to an articulable suspicion of criminal conduct." *Id.* at 1308, n. 5. More on point, then, is *State v. Patterson,* 582 A.2d 1204. There, we upheld the trial court's finding that the stop of defendant's car was based on a "reasonable and articulable suspicion." We held, "Defendant's action in relinquishing the wheel in advance of a legal roadblock gave rise to a reasonable, articulable suspicion of criminal conduct that amply justified the investigative stop." *Id.* at 1206.

■ These two cases do not directly resolve the issue here, whether the investigative stop of D'Angelo was supported by a "reasonable and articulable suspicion." The cases reveal that the stop can be upheld if the roadblock is constitutional and the stop is supported by a "reasonable and articulable suspicion." Here, the District Court held that the roadblock was constitutional and that conclusion has not been challenged. It did not make an explicit finding as to "reasonable and articulable suspicion," but such a finding is implicit in its opinion. First, absent a specific finding or request therefor, the trial court is presumed to have made all factual findings necessary to support its decision. *State v. Fournier,* 554 A.2d 1184, 1187 (Me.1987); *State v. Garland,* 445 A.2d 1021 (Me.1982). Since a finding that the stop was based upon "reasonable and articulable suspicion" was necessary to the court's decision not to suppress the evidence, we must assume that it made such a finding. The District Court's opinion, moreover, relies on a case which holds that the act of turning around to avoid a roadblock may give rise to a "reasonable and articulable suspicion" and justify a valid seizure. *See Snyder v. State,* 538 N.E.2d 961, 965–966 (Ind.App. 4th Dist.1989) (existence of reasonable suspicion determined on a case by case basis). By allowing the evidence pursuant to the *Snyder v. State* rationale, the District Court implicitly found that this stop was premised upon a "reasonable and articulable suspicion."

■ We will overturn the District Court's finding that the stop was supported by a "reasonable and articulable suspicion" only if the record discloses that it is clearly erroneous. *State v. Fuller,* 556 A.2d 224 (Me.1989); *State v. Thurlow,* 485 A.2d 960, 963 (Me.1984) ("Whether for a particular vehicular stop the police had the required articulable suspicion is always a question of fact to be decided by the trial judge who hears the witnesses at the suppression hearing."). Notwithstanding the intermediate Superior Court review, we review the District Court's decision directly. *In re Christopher C.,* 499 A.2d 163 (Me.1985). Since it cannot be said that the District Court's finding was clearly erroneous, we uphold its decision.

■ A review of the District Court's opinion illustrates the facts that provided Officer Budge with a "reasonable and articulable suspicion" that the occupants of the D'Angelo vehicle were engaged in illegal activity. The vehicle and its occupants did more than turn away from a

distant roadblock. *See State v. Powell*, 591 A.2d at 1308 (defendant turned around about 700 yards before the roadblock). The vehicle pulled into the driveway about 75 yards before the checkpoint. Officer Budge had reason to believe that the vehicle did not belong there. He knew some of the house's residents and had never seen this particular vehicle at the house. Moreover, the vehicle's occupants' actions did not indicate that they had any legitimate purpose in being there. They stopped the engine and turned off the lights, but did not leave the vehicle. Instead, they turned to observe the police activities nearby. As in *State v. Patterson*, this behavior may give rise to a "reasonable and articulable suspicion" of illegal activity.[1]

The entry is:

The opinion of the Superior Court is vacated and the decision of the District Court reinstated.

McKUSICK, C.J., and WATHEN and CLIFFORD, JJ., concurring.

GLASSMAN, Justice, dissenting.

I must respectfully dissent. The issue presented in this case is not that addressed by the court of whether the trial court's findings of fact were clearly erroneous. The facts in this case are not materially disputed. The defendant, on his appeal to the Superior Court and on the State's appeal before us, challenges the legal conclusion of the trial court as error for being based on a misinterpretation of the applicable law. Thus, the "clearly erroneous" standard of review is inapplicable. *State v. Boilard*, 488 A.2d 1380, 1384 (Me.1985). *State v. Johnson*, 413 A.2d 931, 933 (Me. 1980).

The District Court properly found that the following facts, as articulated in Budge's testimony, *did not* justify his stop of D'Angelo's vehicle: (1) at approximately 11:00 p.m. on June 2 the D'Angelo vehicle turned into a driveway of an apartment house approximately 75 yards from the checkpoint; (2) Budge knew some of the people who lived in one of the apartments; (3) Budge did not recognize the D'Angelo vehicle; (4) the lights and engine of the D'Angelo vehicle were turned off and the three occupants remained in the vehicle for 30 seconds during which time their heads were turned toward the illuminated cones and flashing blue lights at the site of the roadblock. *See State v. Caron*, 534 A.2d 978, 979 (Me.1987) (suspicion for stop must be based on information available to trooper at time of stop and cannot be bolstered by evidence of driver's intoxication gathered in post-stop investigation). Given these facts, what then could be the basis for the court's legal conclusion that Budge had an *objectively reasonable* suspicion that D'Angelo was engaged in criminal conduct? The District Court stated that *"the only justifying basis for this stop is the roadblock."*

The United States Supreme Court has not, nor heretofore has this court, held that the isolated fact that a roadblock exists justifies the stop of any vehicle within its general vicinity. *See Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (initial stop of motorists *passing through* a specific checkpoint and associated observation and questioning by officer not violation of fourth amendment); *State v. Leighton*, 551 A.2d 116 (Me.1988) (stop of all vehicles *passing through* roadblock checkpoint constitutional); *State v. Patterson*, 582 A.2d 1204 (Me.1990) (stop of vehicle *passing through* checkpoint and questioning of occupants based on officer's observation of their conduct in view of checkpoint justified); *State v. Powell*, 591 A.2d 1306 (Me.1991) (to justify stop of vehicle *not passing through* roadblock checkpoint officer must have reasonable and articulable suspicion occupants engaged in criminal activity).

The mere presence of a roadblock does not eliminate the requirement that there be

---

1. Other states have also concluded that avoidance may, under certain circumstances, give rise to a "reasonable and articulable suspicion." *Snyder v. State*, 538 N.E.2d 961 (Ind.App. 4th Dist.1989); *State v. Giessinger*, 235 Neb. 140, 454 N.W.2d 289 (1990); *Coffman v. State*, 26 Ark. App. 45, 759 S.W.2d 573 (1988); *Smith v. State*, 515 So.2d 149 (Ala.Cr.App.1987).

an objectively reasonable suspicion of criminal activity to justify the stop of a vehicle not *passing through,* the checkpoint of a roadblock. Anything less would countenance roving stops, a practice declared unconstitutional by the Supreme Court in *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits." *Cf. Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). I agree with the Superior Court that based on the facts of this case, together with all rational inferences that can be drawn therefrom, the District Court erroneously concluded that at the time of the stop the existing specific and articulable facts were constitutionally sufficient to give rise to a reasonable suspicion that D'Angelo was engaged in criminal activity. *See State v. Griffin,* 459 A.2d 1086, 1089 (Me.1983) (standard to assess constitutional sufficiency of factual basis justifying stop). I would affirm the judgment of the Superior Court.