2002 ME 44

**STATE of Maine**

v.

**Margaretha BJORKARYD-BRADBURY.**

Supreme Judicial Court of Maine.

Argued: Feb. 5, 2002.

Decided: March 27, 2002.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty. (orally), Portland, for State.

Matthew B. Nichols, Esq. (orally), Nichols & Webb, P.A., Saco, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Margaretha Bjorkaryd–Bradbury appeals from a judgment of conviction of operating a motor vehicle while under the influence of intoxicants (OUI) in violation of 29–A M.R.S.A. § 2411 (1996)[1] entered in the Superior Court (Cumberland County, *Delahanty J.*) following Bradbury's conditional guilty plea after the denial of her motion to suppress evidence in the District Court (Portland, *Horton J.*). Bradbury contends that the District Court erred by denying her motion to suppress evidence of her intoxication because the roadblock at which she was stopped violated 29–A M.R.S.A. § 2081(4)(E) (1996 & Supp.2001), which places restrictions on the enforcement of the seatbelt law, and was unconstitutional. We find Bradbury's contentions unpersuasive and affirm the judgment.

[¶ 2] Between 3:00 P.M. and 8:30 P.M. on Friday, November 24, 2000, the Scarborough Police Department conducted a roadblock on the Payne Road in Scarborough. Although the Department's log sheets described the roadblock as a "seatbelt roadblock," only one purpose of the roadblock was to check vehicles for seatbelt violations and remind motorists of the importance of complying with Maine's seatbelt law. The officers were checking for any type of motor vehicle or traffic safety violation, such as registration or inspection violations and equipment defects.

[¶ 3] All vehicles traveling south on the Payne Road were stopped. As each car came to a stop, an officer approached the vehicle and handed the motorist a card that gave a brief explanation on why the Scarborough Police Department was conducting the stop. This exchange took between ten to fifteen seconds. An officer then inspected the vehicle for any defects or expired registration or inspections, and briefly spoke with the driver. The check lasted only a couple of minutes.

[¶ 4] The officers relied on their prior training and experience with roadblocks in performing the tasks assigned to them. They understood that if, after the stops were made, they developed a reasonable suspicion that the motorist was breaking the law or committing a crime they could take further steps to determine whether to issue a summons or whether probable cause existed to make an arrest.

[¶ 5] According to the roadblock log, 1,020 vehicles were stopped at the roadblock. Two arrests for operating under the influence were made. Two drug-related summonses, six equipment defect notices, fourteen warnings, five seatbelt violation summonses, and three summonses for expired registrations or inspections were issued.

[¶ 6] At about 5:00 P.M., Bradbury's vehicle was stopped. She was the only occupant of her vehicle. An officer approached her vehicle, observed that her window was rolled down only a few inches, and decided to detain her further in another area rather than allowing her to pass through the roadblock.[2]

1. Section 2411(1) states, in pertinent part, the following:

> A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:

> A. While under the influence of intoxicants; or
> B. While having a blood-alcohol level of 0.08% or more.

> 29–A M.R.S.A. § 2411 (1996).

2. No evidence of what occurred after Brad-

[¶ 7] Bradbury was subsequently charged with OUI. She filed a motion to suppress arguing that the roadblock was unconstitutional and in violation of 29–A M.R.S.A. § 2081(4)(E). The District Court denied the motion. The case was then transferred to the Superior Court where Bradbury entered a conditional guilty plea. This appeal followed.

[¶ 8] Bradbury makes the same arguments she made in her motion to suppress. She first argues that the roadblock was an unlawful "seatbelt roadblock" in violation of 29–A M.R.S.A. § 2081(4)(E). Relying on *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), Bradbury also argues that the roadblock constitutes an unreasonable seizure in violation of her rights under the United States and Maine constitutions because the primary purpose of the roadblock was illegal.

■■■ [¶ 9] Motions to suppress are reviewed for errors of law, with factual findings reviewed for clear error. *State v. Anderson*, 1999 ME 18, ¶ 6, 724 A.2d 1231, 1233. Statutory construction is a question of law, and we review the trial court's construction of a statute de novo. *Great Northern Paper v. Penobscot Nation*, 2001 ME 68, ¶ 14, 770 A.2d 574, 580. Our main objective in statutory interpretation is to give effect to the Legislature's intent. *Id.* ¶ 15, 770 A.2d at 580. To determine that intent, we look first to the statute's plain meaning and, if there is ambiguity, we then look beyond that language to the legislative history. *Id.*

[¶ 10] Section 2081(3–A) mandates that passengers in, and operators of automobiles must be "properly secured in a seatbelt." 29–A M.R.S.A. § 2081(3–A). Section 2081(4)(E) states that section 2081(3–A) "may be enforced only if a law enforcement officer has detained the operator of a motor vehicle for a suspected violation of another law." *Id.* § 2081(4)(E).

[¶ 11] Contrary to Bradbury's contention, section 2081(4)(E) does not prohibit roadblocks that check for general motor vehicle safety violations. The trial court found that the roadblock had a broad "safety focus that included, but was not limited to, seatbelt violations." This finding is well supported by the evidence. *See State v. Langill*, 567 A.2d 440, 443–44 (Me. 1989) (findings of fact must be affirmed on appeal if there is any competent evidence in the record to support them). The roadblock did not violate section 2081(4)(E).

■■■ [¶ 12] In *Edmond*, the City of Indianapolis conducted "vehicle checkpoints on Indianapolis roads in an effort to interdict unlawful drugs." 531 U.S. at 34, 121 S.Ct. 447. The Supreme Court focused on the "primary purpose" of the roadblock and held that the drug interdiction roadblock violated the Fourth Amendment because its primary purpose was indistinguishable from the City's general interest in crime control. *Id.* at 48, 121 S.Ct. 447. While the Court did not "limit the purposes that may justify a checkpoint program to any rigid set of categories," it declined "to approve a program whose primary purpose is ultimately indistinguishable from the general interest in crime control." *Id.*

[¶ 13] The Court's holding in *Edmond* was limited. The Court was careful to explain that its invalidation of the roadblock in that case left undisturbed prior decisions permitting roadblocks for the

―――――――――

bury was detained was admitted at the suppression hearing because she only argued that

the initial stop was unconstitutional.

purpose of enforcing the motor vehicle laws:

> It goes without saying that our holding today does nothing to alter the constitutional status of the sobriety and border checkpoints that we approved in [*Michigan Department of Police v. Sitz*, 496 U.S. 444, 450–55, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990),] and [*United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976),] or of the type of traffic checkpoint that we suggested would be lawful in [*Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ]. The constitutionality of such checkpoint programs still depends on a balancing of the competing interests at stake and the effectiveness of the program.

*Id.* at 47, 121 S.Ct. 447.

[¶ 14] In *Prouse*, the Court stated that roadblocks to verify drivers licenses and registrations, that are minimally intrusive and that do not involve the unconstrained exercise of discretion, are permissible to serve a highway safety interest. *Prouse*, 440 U.S. at 663, 99 S.Ct. 1391.

[¶ 15] The fundamental question pursuant to the federal and state constitutions is "whether the action of the police officers in conducting the roadblock was 'reasonable' under the Fourth Amendment." *State v. Patterson*, 582 A.2d 1204, 1205 (Me.1990) (quoting *State v. Cloukey*, 486 A.2d 143, 145). This "involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Id.* (quoting *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)).

[¶ 16] We have concluded on several occasions that roadblocks whose purpose is to enforce compliance with motor vehicle or driver safety requirements, that are minimally intrusive, are constitutional. *Patterson*, 582 A.2d at 1205 (motor vehicle safety roadblock upheld); *State v. Babcock*, 559 A.2d 337, 337 (Me.1989) (OUI roadblock upheld); *State v. McMahon*, 557 A.2d 1324, 1325 (Me.1989) (combined OUI and motor vehicle safety roadblock upheld); *State v. Leighton*, 551 A.2d 116, 118 (Me.1988) (OUI roadblock upheld); *Cloukey*, 486 A.2d at 147 (Me.1985) (traffic safety roadblock upheld).

> [We] have consistently emphasized that the State's vital interest in the health, safety, and welfare of its citizens justifies roadblocks designed to enforce motor vehicle safety laws and to prevent traffic accidents. The public is best served by a regime that deters drivers from traveling in unsafe vehicles and identifies safety defects before vehicles are involved in accidents.

*Patterson*, 582 A.2d at 1205 (citations omitted).

[¶ 17] In applying the balancing test, we have considered the reasonableness of the officers' actions at the roadblock in light of the following factors:

> (1) The degree of discretion, if any, left to the officer in the field; (2) the location designated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (6) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test.

*Leighton,* 551 A.2d at 118 (quoting *Cloukey,* 486 A.2d at 146 (quoting *State v. Deskins,* 234 Kan. 529, 673 P.2d 1174, 1185 (1983))).

[¶ 18] The purpose of the roadblock was to check for equipment defects and other motor vehicle law violations. The officers conducted the roadblock according to the training standards previously established by the Scarborough Police Department. They had no discretion regarding which vehicles to stop. The roadblock was limited in duration. The length of detention of each motorist for the actual safety check was only a couple of minutes. The stop was conducted in a non-intrusive manner.[3] Furthermore, the roadblock was reasonably effective in detecting safety violations, as the number of arrests made and warnings and summonses issued proves.

[¶ 19] Because the roadblock was reasonably effective in promoting the State's strong interest in preventing traffic accidents and promoting the health and welfare of its citizens, and the stops were minimally intrusive, the roadblock was constitutional.

The entry is:

Judgment affirmed.

---

**3.** Although in this case there was no advance notice to the public at large, that factor is less important when the purpose of the roadblock is to check for safety violations.