STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CRIMINAL ACTION
                                        DOCKET NO CR-09-35

STATE OF MAINE,

              v.                    ORDER

TRAVIS J. NADEAU,

FILED & ENTERED
SUPERIOR COURT
JUL 1 0 2009
PENOBSCOT COUNTY

Hearing was held on the defendant's motion to suppress on May 28, 2009. The State was represented by counsel, Greg Campbell, Esq., while the defendant was present and represented by counsel, Michael Harmon, Esq. The primary issues raised in this motion are the stop of defendant's motor vehicle and probable cause for arrest and test.

At approximately 4:00 p.m. on November 29, 2009, Officer Cox of the Millinocket Police Department received a call from an off-duty officer indicating that the officer had just seen Travis Nadeau and described the direction in which the Nadeau vehicle was traveling. The officers had been trying to serve Nadeau with a subpoena because he was a witness in a criminal case and they suspected that he had been trying to avoid service. Officer Cox then noticed a person who he recognized as Travis Nadeau operating his truck on Central St., approaching the officer. After the truck passed, Officer Cox turned left and reversed his direction by going around one block and re-entering Central St. at which time he no longer saw the truck. He proceeded .2 to .3 miles on Central and as he approached Aroostook St. he noticed that the truck had turned left onto that street and was approximately 100 yards away. The speed limit on the relevant streets was 25 m.p.h. and Officer Cox testified that even though he could not see the truck after his turn, he concluded that the driver of the truck had been

exceeding the speed limit because he had accelerated after passing the officer on Central St. and had made more progress than he thought likely if he had been traveling at 25 m.p.h. Officer Cox turned left on Aroostook and saw the truck turn right on Spruce St. He testified that by visual observation he estimated the truck's speed to be 35 m.p.h. and he also turned right onto Spruce. He then activated his blue lights as he went through the next intersection whereupon the truck made two right turns, coming to a complete stop at a stop sign while making the first turn, and stopped. To reach Mr. Nadeau's home, one would have to continue to travel down Spruce St in the direction both vehicles were traveling.

After stopping the defendant, officer Cox made observations and conducted field sobriety tests that caused him to conclude that the defendant was under the influence. When he told Mr. Nadeau that he was placing him under arrest for operating under the influence, Mr. Nadeau struggled and resisted being handcuffed. Despite the officer's use of the taser, Mr. Nadeau broke free and ran away. After about three hours, the defendant came to the police station to surrender to the police and was taken into custody. At that time he apologized, answered a few questions, and took a blood alcohol test. Officer Cox testified at hearing that he still thought Mr. Nadeau was under the influence but less so after surrender than previously. He also stated that Mr. Nadeau was not drastically impaired, but was impaired to some extent.

Officer Cox testified that he was originally going to observe where the truck went so that he could serve the subpoena, but specified excessive speed as a reason for the stop. He said that the truck "might have made it to 30 m.p.h." and was concerned that "he might run on me". The truck traveled for three blocks after Office Cox turned on his blue lights. During his initial description of following the truck, Officer Cox testified that he put his blue lights on to get through an intersection. During cross-

examination Officer Cox indicated that if Mr. Nadeau didn't go home, he would have stopped him, admitted that he didn't mention in his police report that the truck was traveling at 35 m.p.h., but only mentioned excessive rate of speed, and admitted that he testified at a prior administrative suspension hearing that he stopped the defendant to serve the subpoena.

An officer is justified in making an investigatory stop if, at the time of the stop, the officer has an articulable suspicion of criminal activity and the suspicion is objectively reasonable in the totality of the circumstances. *State v. Lear*, 1998 ME 273 ¶5, 722 A.2d 1266. The officer must have actually entertained a suspicion and the court must determine whether it was in fact reasonable. Not only does a reasonable articulable suspicion of criminal activity justify an investigatory stop, but also a reasonable articulable suspicion of a civil violation can justify a stop, *State v. Webber*, 2000 ME 168, 759 A.2d 724; certain safety stops are permissible, *State v. Pinkham*, 565 A.2d 318 (Me. 1989); and certain organized roadblock stops are also permitted, *State v. D'Angelo*, 605 A.2d 68 (Me. 1994).

Based on the preceding facts, the court finds that in fact Officer Cox stopped the defendant to serve the subpoena. He was concerned that Mr. Nadeau had been avoiding the subpoena and wanted to serve it prior to the trial in which Mr. Nadeau was to testify. Furthermore, he interpreted the series of turns that defendant made as a present attempt to avoid service, even though a route to defendant's home involved continued travel on Spruce St. The court does not find that the officer stopped Mr. Nadeau for speeding because any excessive speed was minor and the officer had a limited opportunity to estimate the defendant's speed. He didn't mention a specific speed in his police report and had testified at an earlier license suspension proceeding that he stopped Mr. Nadeau in order to serve the subpoena.

The State also argues that even if officer Cox were not entitled to stop the defendant for the reason existing at the time he turned on his blue lights, he had an independent reason for stopping the defendant once the blue lights were turned on because the defendant did not stop immediately. *See Lear, supra.at ¶7*. Evidence of this justification is sparse. After the officer turned on his blue lights, Mr. Nadeau traveled a short distance of at most three blocks, traveled at a reasonable speed, and even came to a complete stop at a stop sign before making his initial right turn. Furthermore, Officer Cox did not use his siren. The court does not find that it is objectively reasonable to stop a motorist for failure to stop under these circumstances.

The issue concerning this stop, therefore, is whether a police officer is entitled to make a vehicle stop in order to serve a subpoena. The court has examined the case law concerning the circumstances that can justify an investigatory stop and can find no precedent that justifies a stop performed in order to serve a subpoena, nor does such a stop fall under any of the traditional criteria. The State argues that this is a proper police function and under the circumstances of this case, that include the officer's subjective belief that Mr. Nadeau had been avoiding the subpoena, it was reasonable to make the stop. The court notes that according to M.R.Crim.P. 17, service of a subpoena is not exclusively a police function because certain non-police officers can also make service. Office Cox should have waited until the defendant stopped on his own before attempting to serve the subpoena. Based on this analysis, the court grants the motion to suppress with regard to the stop of defendant's vehicle and suppresses evidence obtained after the stop, including observations, statements and field sobriety tests.

The question of the admissibility of the test result needs to be addressed separately because of the intervening event, escaping, that took place between the time of the stop and the taking of the test. Evidence must be excluded only if it has been

obtained by exploitation of an illegality rather than by means sufficiently distinguishable so as to purged by the primary taint. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963), *State v. Grandmaison*, 327 A.2d 868, 870 (Me. 1974). In this case the intervening event resulted in the defendant's voluntary surrender at the police station three hours after the stop and submission to a blood alcohol test. This court finds that this was a sufficiently intervening event to cause the test to be free of the taint of the stop, but it is admissible only if there was probable cause to believe the defendant was under the influence without considering evidence obtained directly as a result of the stop. At the time Officer Cox administered the blood alcohol test, he had observed the defendant driving a motor vehicle prior to the stop, but he testified to no additional observations after the surrender concerning Mr. Nadeau's sobriety. He did not testify to any specific observations made at the time of the surrender relevant to sobriety, but only indicated an opinion that was not supported by specifics. Based on this lack of evidence apart from information obtained directly as a result of the illegal stop, the court concludes that the administration of the test was not supported by probable cause and suppresses the test result.

Because the actions that constitute the escape are a sufficient intervening event, nothing in the order should be regarded as affecting the admissibility of testimony, with regard to the escape charge, concerning the arrest and subsequent absconding of the defendant, which is not suppressed.

The clerk is directed to incorporate this Order into the docket by reference.

Dated: JULY 10, 2009

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT