2000 ME 189

**Peter BISSIAS**

v.

**James KOULOVATOS et al.**

Supreme Judicial Court of Maine.

Argued Oct. 4, 2000.
Decided Oct. 30, 2000.

Peter S. Plumb (orally), Krista N. Everly, Murray Plumb & Murray, Portland, for plaintiff.

George J. Marcus (orally), Regan M. Hornney, Marcus, Grygiel & Clegg, P.A., Portland, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] James Koulovatos and Town House Apartments, Inc., appeal from a judgment entered in the Superior Court (Sagadahoc County, *Marden, J.*) dissolving Town House and appointing a receiver *pendente lite*. Koulovatos contends that the trial court erred by concluding that Peter Bissias was a shareholder and thus had standing to commence an action for judicial dissolution of Town House. We find no error and affirm the judgment.

[¶ 2] On August 27, 1992, Bissias and Koulovatos executed a purchase and sale agreement to buy an apartment complex in Bath, which was later renegotiated for a reduced price of $450,000 due to the discovery of lead and asbestos in the building. Concerned with potential liability from the lead and asbestos, the parties, with the help of Attorney David A. King, formed a corporation on October 7, 1992, under the name of Town House Apartments, Inc. Both parties assigned their rights in the renegotiated purchase and sale agreement to the corporation. Koulovatos provided the down payment, used his real estate as security for mortgage financing, and contributed personal property as well.

[¶ 3] Bissias and Koulovatos were directors of Town House; Bissias was also vice president and treasurer, and Koulovatos was president. The plan for selling stock authorized the issuance of 2000 shares of no par value stock in return for money or property (other than stock or securities) only. Attached stock subscriptions were neither signed nor indicated a number of shares for either party. Within the next year, the parties executed various documents indicating that each held a one-half interest in Town House, including: an election for tax treatment as an S–Corporation, waivers of workers' compensation benefits from both parties, and Town House's 1992 federal income tax return. Furthermore, the stock transfer ledger of Town House stated that both Bissias and Koulovatos each held fifty of the one hundred shares that were issued.

[¶ 4] Bissias brought this complaint for judicial dissolution of Town House following significant disagreement between the parties regarding their contributions to the corporation.[1] Following a non-jury trial conducted over several days, the court dissolved Town House and appointed a receiver *pendente lite*. The court found that Bissias had been issued fifty valid shares of Town House stock, as evidenced by the entry to that effect in the stock transfer ledger, and that the contract rights Bissias assigned to Town House constituted valuable consideration sufficient to allow the issuance of the shares to him, making him a valid shareholder with standing to bring

---

1. "The Superior Court of this State shall have full power to decree the dissolution of, and to liquidate the assets and business of, a corporation ... [i]n an action filed by a shareholder .... " for reasons such as wasted corporate assets or fraudulent acts of directors. 13–A M.R.S.A. § 1115 (1981).

the lawsuit. A dollar value was never placed on the purchase and sale agreement that Bissias and Koulovatos assigned to Town House. The court noted that as president, Koulovatos was in an equal or better position to see that the value of the purchase and sale agreement was determined, but did not do so. This appeal by Koulovatos and Town House followed.

[¶ 5] Judicial dissolution is authorized in an action brought by a shareholder.[2] 13–A M.R.S.A. § 1115 (1981). Koulovatos contends that Bissias has no standing to bring this action because he is not a shareholder. He contends that 13–A M.R.S.A. § 506(2) (1981)[3] requires that the directors fix the value of consideration given for shares, and that shares purportedly issued without such valuation are void. Because Town House never affixed a definite dollar value to the property Bissias transferred to Town House in exchange for his shares, namely his rights in the renegotiated purchase and sale agreement, Koulovatos argues, any shares Bissias claims to hold according to the stock transfer ledger entry are void.

[¶ 6] The shareholder status of a party sufficient to confer standing represents a mixed question of law and fact. The underlying historical facts on which the Superior Court based its finding of standing are reviewed for clear error. *H.E. Sargent, Inc. v. Town of Wells*, 676 A.2d 920, 923 (Me.1996). The interpretation of section 506(2) and the legal conclusion of shareholder status sufficient to confer standing are legal questions subject to de novo review. *Austin v. Austin*, 2000 ME 61, ¶ 8, 748 A.2d 996, 1000.

[¶ 7] The plain language of section 506(2) does not require that a dollar value be placed on all property given to a corporation in exchange for shares. Nor does it provide that the failure to place such value invalidates the shares given in exchange for property. Rather, section 506(2) merely requires that consideration be given for shares and that such consideration have *a* value. The trial court found as a fact, and the parties do not challenge the finding, that Bissias assigned all his rights in the renegotiated purchase and sale agreement to the corporation. The trial court also found that the assigned purchase and sale agreement had considerable value, a finding that is supported by the record. Koulovatos cites no persuasive authority for the proposition that shares issued in exchange for valuable consideration but on which no dollar value is placed are void.[4] The language of section 506(2) does not require any more than that *some* valuable consideration be given in exchange for the issuance of shares. Accordingly, the failure of corporate directors to fix a monetary value for property given in consideration for shares of stock does not by itself automatically invalidate such shares.

[¶ 8] The trial court also found that fifty shares of Town House common stock had indeed been issued to Bissias. That finding is supported by the evidence. Both parties, as well as the corporation's clerk, Attorney King, understood that the parties would split the business 50/50. The corporate attorney entered fifty shares for each in the stock transfer ledger.[5] Bissias and Koulovatos at all times prior to December of 1993 represented to

2. A shareholder is defined as "one who is a holder of record shares in a corporation." 13–A M.R.S.A. § 102(17) (1981).

3. Section 506 permits issuance of shares without par value "for such consideration as may be fixed from time to time by the board of directors ...." 13–A M.R.S.A. § 506(2) (1981).

4. The requirement of consideration is meant to protect third parties from undercapitalization in corporations. This is not a case involving the protection of third parties as against a corporation, but instead involves a dispute between the only two shareholders of a corporation, a context well outside the scope of the rationale for consideration.

5. "The books of a corporation are the regular evidence of their doings." *Coffin v. Collins*, 17 Me. 440, 442 (1840).

others, including various governmental agencies, that they were equal owners of the corporation. Furthermore, the evidence shows that Bissias's shares were issued in exchange for the consideration of his rights in the purchase and sale agreement, and that both parties, by their conduct and the circumstances, regarded that property as having sufficient value to be consideration for the exchange. The trial court's finding that Bissias was the owner of fifty shares of stock in Town House is therefore not clearly erroneous.

The entry is:

Judgment affirmed.