2003 ME 114

Patricia MCLAUGHLIN o/b/o
Joseph McLaughlin

v.

SUPERINTENDING SCHOOL
COMMITTEE OF
LINCOLNVILLE.

.

Supreme Judicial Court of Maine.

Argued: March 11, 2003.
Decided: Sept. 16, 2003.

Catherine R. Connors, Esq. (orally), Daniel E. Wathen, Esq., Pierce Atwood, Portland, Charles E. Gilbert III, Esq., Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for plaintiffs.

Deirdre M. Smith, Esq. (orally), Melissa A. Hewey, Esq., Drummond Woodsum & MacMahon, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Patricia McLaughlin (Patricia), as next best friend of her grandson Joseph McLaughlin [1] (Joseph), appeals from the summary judgment in favor of Superintending School Committee of Lincolnville (School) entered in the Superior Court (Waldo County, *Marden, J.*). Patricia contends that the Superior Court erred in finding that (1) she failed to comply with the 180–day notice requirement of the

---

1. Joseph is a minor, who turned fifteen years old on July 12, 2003.

Maine Tort Claims Act (MTCA), 14 M.R.S.A. § 8107(1) (2003), and (2) that the September 2001 amendment to 14 M.R.S.A. § 8107(2) (2003) did not extend the deadline for her notice of claim. Because we agree with Patricia that the amendment to section 8107 extended the deadline for her notice of claim, we vacate the Superior Court's judgment and remand.

## I. BACKGROUND

[¶ 2] Joseph first enrolled at the Lincolnville Central School in November 1995, part way through his first grade year. During his third grade year, he began complaining of various health problems, including persistent headaches, confusion, memory loss, back pain, muscle weakness, and fatigue. Patricia noticed that on the days she picked Joseph up for lunch and took him to air-conditioned locations, he felt better. That spring it had been hot, and the classroom was stuffy and hot, with little airflow.

[¶ 3] Patricia noticed a link between the classroom conditions and Joseph's problems, but attributed his problems to the heat. She disputes that she had any suspicion at that time that Joseph's problems were caused by the later-identified air quality problems at the school, or even later in fifth grade when his problems became more severe. Initially, she did not bring her concerns to the school officials because she did not consider herself Joseph's "parent," but she did talk to Joseph's third grade teacher about the hot, stuffy conditions in the classroom and Joseph's problem catching his breath.

[¶ 4] Later, in fourth and fifth grades, Joseph developed problems with his motor skills, including an inability to hold and use a pencil. Patricia spoke to the school superintendent about Joseph's symptoms at the end of his fourth grade year, but stated that at that time she had no idea what might be causing them. Finally, in fifth grade, Joseph displayed strong signs of irritability.

[¶ 5] On April 3, 2000, a routine indoor air quality assessment revealed to the school department the presence of certain molds, thought to have adverse health effects, and carbon dioxide levels above recommended levels. The assessment results were disclosed to the media and the public at a public meeting that evening. Local media reported the results the next day and continued to discuss the results throughout April, May, and June 2000.

[¶ 6] Because of the air quality problems, on April 13, 2000, the School Department closed certain classrooms and relocated classes to other rooms in the building. Following the disclosure of the air quality information, Patricia faxed that information to one of Joseph's doctors, Dr. Lord, who told her that the air quality at the school was "not conducive to Joseph's health." Patricia discussed with Dr. Lord the possible connection between the air quality at the school and Joseph's muscle weakness. Patricia knew that high carbon dioxide levels could "sap" or "drain" Joseph's muscles and stated that at that time she realized, "inwardly," that the high carbon dioxide levels "could be affecting [Joseph] and [the high level] could be affecting [his] headaches." Based on this information, Patricia, her husband, Joseph's parents, Dr. Lord, Joseph's physical therapist, Donna Dutton, and Dr. Upham, made a joint decision to remove Joseph from the Lincolnville Center School. On April 14, 2000, Patricia withdrew Joseph because of the high carbon dioxide levels and his headaches.

[¶ 7] During the week of April 17 through April 21, 2000, while the school was closed for vacation, the school cleaned

and made other efforts to mitigate the poor air quality. At the end of the week, the department held a second public meeting concerning the contamination. This meeting included presentations from the service that had conducted the air quality assessment, and from Dr. Susan Upham, a physician with whom Patricia had consulted concerning Joseph's problems.

[¶ 8] On April 28, 2000, the Department closed the entire school and relocated all the classes. A third public meeting on May 3, 2000, provided the public with presentations from a variety of officials, including representatives from the Maine Department of Education and the Maine Pesticide Board.

[¶ 9] Patricia also completed an Indoor Air Quality Questionnaire in April 2000, the night before it was due and to the best of her ability, but she could not be sure that it was completely accurate. In the questionnaire, she checked off boxes indicating the main symptoms Joseph had experienced since 1996 that occurred when he was in the building that she may have felt were related to the building. She also stated that she had previously consulted Susan McKinley, a physician, for Joseph's condition, who prescribed Claritin, an allergy medicine. Patricia disputes that she knew the cause of Joseph's health problems in April and testified that she did not link the air quality problems at the school to Joseph's symptoms until October 2000, when Dutton provided a report suggesting that the poor air quality caused his problems. Before Dutton's diagnosis, she could only speculate or guess that there was a connection between the two.

[¶ 10] Patricia sent a notice of claim, required by the MTCA, to the School on November 1, 2000. In March 2001, she filed Joseph's complaint. The School moved for a summary judgment, arguing that the notice of claim had not been filed within 180 days of when the claim accrued. The court entered a summary judgment for the School, finding that, at the latest, the claim accrued in April 2000, when the School publicly disclosed the air quality problems, more than 180 days before the notice of claim. According to the court, this disclosure put Patricia "on notice of some likelihood that the school conditions caused or contributed to" Joseph's condition. Moreover, the court determined that the Legislature's amendment to section 8107 did not extend the notice of claim deadline for Patricia to 180 days after Joseph reached age eighteen. The court reasoned that because the notice had not been timely filed, the cause of action "did not exist at the conclusion of 180 days from the date of injury, therefore, the two-year statute of limitations [had] no meaning."

## II. DISCUSSION

### A. Standard of Review

[¶ 11] We review "the grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom judgment has been granted, to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380 (citations omitted). When considering a motion for summary judgment, the court gives the party opposing summary judgment the benefit of any inferences that might reasonably be drawn from the facts presented. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22. If the record reveals no genuine issue of material fact, then summary judgment is proper.

[¶ 12] Moreover, the burden rests on the moving party to show that the evidence fails to establish a prima facie

case for each element of the cause of action. *Stewart ex rel. Stewart v. Aldrich*, 2002 ME 16, ¶ 8, 788 A.2d 603, 606. The question of when a tort claim accrues is a legal question, *see White v. McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A.*, 2002 ME 160, ¶ 7, 809 A.2d 622, 623; therefore, it is subject to de novo review, *see Bissias v. Koulovatos*, 2000 ME 189, ¶ 6, 761 A.2d 47, 49. A determination of a statute of limitations defense is usually made on a motion to dismiss or for a summary judgment; however, sometimes, a genuine issue of material fact concerning the date of the injury will preclude such rulings. *Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 9 n. 3, 691 A.2d 199, 202.

▆▆ [¶ 13] Statutory interpretation is also a legal question subject to de novo review. *State v. Bjorkaryd–Bradbury*, 2002 ME 44, ¶ 9, 792 A.2d 1082, 1084. When interpreting a statute, our main objective is to give effect to the Legislature's intent. *Id.* "To determine that intent, we look first to the statute's plain meaning." *Id.* If there is no ambiguity, we need proceed no further. *Lewiston Raceway, Inc. v. Maine State Harness Racing Comm'n*,

593 A.2d 663, 665 (Me.1991). If, however, ambiguity exists, then we look beyond that language to the legislative history. *Bjorkaryd–Bradbury*, 2002 ME 44, ¶ 9, 792 A.2d at 1084.

## B. Notice of Claim

▆▆ [¶ 14] According to 14 M.R.S.A. § 8107(1) (2003),[2] unless an exception for good cause applies,[3] a notice of claim must be filed within 180 days of when the cause of action accrues. Patricia filed Joseph's notice of claim on November 1, 2000. For Patricia to have complied with the 180–day requirement, the claim needed to accrue after May 5, 2000. However, in 2001, the Legislature amended 14 M.R.S.A. § 8107(2),[4] which provides notice requirements for claimants who are incapacitated, including minors, by adding a second sentence. Patricia contends that this amendment extends the notice period for minors with causes of action for which the statute of limitations had not expired as of the Act's effective date. We agree.

[¶ 15] The Legislature applied the amendment to "causes of action accruing

---

2. Section 8107(1) provides,

   Notice Requirements for Filing. Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180–day limit, a claimant or a claimant's personal representative or attorney shall file a written notice containing
   . . . .

3. Although in the trial court Patricia argued that the good cause exception applied to this case, she has not done so on appeal.

4. As amended section 8107(2) states,

   Incapacity. If the claimant is incapacitated and thereby prevented from presenting and filing the claim within the time prescribed or if the claimant is a minor, the claim may

be presented and filed on behalf of the claimant by any relative, attorney or agent representing the claimant. *If the claimant is a minor when the cause of action accrues, the notice may be presented within 180 days of the minor's attaining 18 years of age.* 14 M.R.S.A. § 8107(2) (2003) (emphasis added). At the same time, the Legislature correspondingly amended the statute of limitations provision. As amended 14 M.R.S.A. § 8110 states,

   Every claim against a governmental entity or its employees permitted under this chapter is forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues, *except that, if the claimant is a minor when the cause of action accrues, the action may be brought within 2 years of the minor's attaining 18 years of age.*
   14 M.R.S.A. § 8110 (2003) (emphasis added).

on or after the effective date and to causes of action for which the statute of limitations has not expired as of the effective date." An Act to Amend the Maine Tort Claims Act, P.L.2001, ch. 249, § 3. The Act's effective date was September 21, 2001. *Id.* At that time, the relevant statute of limitations period was two years from the date the cause of action accrued. *See* 14 M.R.S.A. § 8110 (2003). The Act is unambiguous. According to its plain language, if Joseph's claim accrued within two years of the Act's effective date, i.e., on or after September 21, 1999, his notice period would be extended until 180 days after his eighteenth birthday because the statue of limitations on his claim had not yet expired.

[¶ 16] By holding that Joseph's cause of action ceased to exist when he failed to file his notice of claim 180 days after it accrued (at the latest April 2000 according to the Superior Court), the Superior Court substituted a "notice of claim" touchstone for the Act's "statute of limitations" touchstone. This interpretation ignores the plain language of the Act and the context of the amendment in reference to the Act's other amendments to the statute, which reflect an awareness of the difference between a notice of claim period and a statute of limitations. *See* An Act to Amend the Maine Tort Claims Act, P.L. 2001, ch. 249, § 2. (amending 14 M.R.S.A. § 8110 to extend the statute of limitations for claimants who are minors when the cause of action accrues to within two years of the minor's attaining eighteen years of age).

[¶ 17] Moreover, the legislative history supports this interpretation. In response to the Office of Policy and Legal Analysis' suggestion that the bill preceding the Act be amended to clarify to which causes of action the Act would apply, the House Judiciary Committee amended the bill by adding the existing "Application" section, and summarized the purpose of the amendment as follows:

This amendment adds an application section to the bill to *enable any person whose statute of limitations has not yet expired to take advantage of the law change.* Therefore, *a minor whose statute of limitations has not run out by the effective date of the Act* would have 180 days after attaining 18 years of age to give notice of an action and 2 years after attaining 18 years of age to bring the action.

Comm. Amend. A to L.D. 966, No. H–279 (120th Legis.2001) (emphasis added).

[¶ 18] An expansion by the Legislature of the time for notice of claim is not unprecedented. The Legislature provided a good cause exception in 14 M.R.S.A. § 8107(1), which extends the time for filing a notice of claim (within certain limits) for other claimants. Prior to the Legislature's action, we noted in *Langevin v. City of Biddeford,* 481 A.2d 495, 499, n. 6 (Me. 1984), that in certain circumstances, it might be difficult to uphold a MTCA notice of claim requirement for a minor and noted that although the Legislature had not tolled the statute of limitations for minors filing claims under the MTCA, it had in other types of civil actions. Through the amendments to sections 8107 and 8110 the Legislature has tolled the statute of limitations for minors and appropriately extended the corresponding notice of claim period. According to the Office of Policy and Legal Analysis, the proponents of the Act sought to make the Maine Tort Claims Act consistent with other tort claims actions. Memorandum from Deb Friedman, Maine Office of Policy and Legal Analysis, to Joint Standing Committee on the Judiciary (April 1, 2001) Comm. Fl.2001 L.D. 966 (120th Legis.2001). In those actions, 14 M.R.S.A. § 853 (2003) provides minors the

opportunity to bring actions, independently, without a representative, within two years of the minor's eighteenth birthday. These two changes conform the treatment of minors under the MTCA to their treatment with respect to other tort claims. We decline to interpret the notice provision in a manner that would limit the minor's ability and conflict with that intent.

## C. Accrual

[¶ 19] Under this interpretation of the amended notice of claim provision, Joseph's claim survives only if it accrued within two years of the statute's effective date, i.e., on or after September 21, 1999. The Superior Court concluded that Joseph's claim accrued, at the latest, in April 2000, when the school publicly disclosed the air quality problems, but it did not determine whether it had accrued before September 21, 1999. Therefore, we must address the question of when Joseph's claim accrued.

[¶ 20] Patricia contends that Joseph's claim did not accrue until she received Dutton's diagnosis in October 2000 because that is when she first discovered the cause of his injuries. Patricia relies on our decisions in *Bernier v. Raymark Industries,* 516 A.2d 534 (Me.1986)[5] and *Townsend v. Chute Chem. Co.,* 1997 ME 46, 691 A.2d 199, and maintains that as a "creeping disease" Joseph's claim accrued on the date of his diagnosis, when she first discovered the cause of his injuries. In the alternative, Patricia contends that, at the earliest, his claim accrued in April 2000, when he was last exposed to the school's air.

[¶ 21] The school maintains that Joseph's claim accrued in 1997 during his

third grade year when his injuries first began. In the alternative, the School contends that, at the latest, his claim accrued in April 2000, when Joseph was last exposed to the school's air. The Superior Court concluded that Joseph's claim accrued, at the latest, in April 2000, when the school publicly disclosed the air quality problems. We conclude that the School has failed to carry its burden of establishing that there is no genuine issue of material fact that Joseph's claim did not accrue on or after September 21, 1999.

[¶ 22] "The general test for determining when a cause of action accrues is when a plaintiff received a judicially recognizable injury." *Johnston v. Dow & Coulombe Inc.,* 686 A.2d 1064, 1065–66 (Me.1996) (internal quotation marks omitted). A tort claim accrues when "the plaintiff sustains harm to a protected interest." *Id.* at 1066 (internal quotation marks omitted). In other words, it accrues at "the point at which a wrongful act produces an injury for which a potential plaintiff is entitled to seek judicial vindication." *Williams v. Ford Motor Co.,* 342 A.2d 712, 714 (Me.1975). We have recognized that in certain circumstances, this touchstone, the date of injury, works a manifest injustice. *See e.g., Myrick v. James,* 444 A.2d 987, 995 (Me.1982). We have, therefore, recognized that in certain limited circumstances a cause of action accrues when the injury is discovered rather than when the injury was incurred. *Johnston,* 686 A.2d at 1066 (explaining that the Court has limited the application of the discovery rule for accrual of causes of action "to three discrete areas: legal malpractice, foreign object and negligent diagnosis medical malpractice, and asbestosis").

5. We note that in *Bernier,* we did not actually apply a discovery rule exception, *see Bernier v. Raymark Indus.,* 516 A.2d 534, 543 n. 7, and conclude that we need not consider the application of *Bernier* to decide this appeal.

[¶ 23] However, we need not consider the application of a discovery rule exception here. First, the School has not established without dispute, that Joseph incurred no new injury on or after September 21, 1999. The School asserted that Patricia claimed that Joseph first displayed signs of irritability in the fifth grade, which would have commenced in the fall of 1999. Patricia qualified this statement, asserting that Joseph's irritability "came on really strong in fifth grade." The School has not established that this new injury was not the result of Joseph's post September 21, 1999, exposure to the School's air. Second, the School has not established that the presence of toxic molds and high carbon dioxide levels in the school was not the result of a series of separate distinct events that either caused his later injuries or contributed to his then existing symptoms.[6] *See Sturgeon v. Marois Bros., Inc.,* 511 A.2d 1065, 1066 (Me. 1986) (denying summary judgment when the record did not establish conclusively that the same negligent conduct that occurred prior to the statute of limitations caused the later damage).

[¶ 24] Finally, in *Townsend,* although not necessary to the holding, we stated that for the defendant to prevail on a statute of limitations defense, the defendant had the burden of establishing both that the plaintiff's injury occurred outside the statute of limitations and that the existence of the causal relationship was known outside the statute of limitations. *Town-*send, 1997 ME 46, ¶ 9, 691 A.2d at 202. We agree with the Superior Court that by April 2000, Patricia should have known that the air quality problems at the school caused or contributed to Joseph's condition. However, the School has not established that she had reason to understand the causal relationship by September 21, 1999. Patricia asserts that she did not know that mold and high levels of carbon dioxide existed in the school's air before the School's disclosure in April 2000. The School does not dispute this. Without any knowledge that there were problems with the air, we cannot infer that Patricia had a sufficient understanding of the cause of Joseph's symptoms to conclude that his injury was judicially recognizable prior to September 21, 1999. We, therefore vacate the summary judgment.

The entry is:

Judgment vacated. Case remanded to the Superior Court for proceedings consistent with this opinion.

6. We make no statement as to whether Joseph's cause of action constitutes a "continuing tort," a theory not alleged in Joseph's complaint or advanced at any point during this litigation and one which we have never applied in this context. The common law continuing tort doctrine may be applied when no single incident in a chain of tortuous activity can "fairly or realistically be identified as the cause of significant harm." *Fowkes v. Penn. R.R. Co.,* 264 F.2d 397, 399 (3rd Cir. 1959) (applying the continuing tort doctrine when the cumulative effect of using a jackhammer at work caused the plaintiff's arthritis). In such cases, the breach of duty is regarded as a single continuing wrong that terminates when the exposure to the harm terminates. *See id.* at 399 (holding that the statute of limitations did not begin to run before the plaintiff was "relieved of [the] jolting work").