STATE OF MAINE
PENOBSCOT, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET No. CV-03-215
ANM- PEN-10/21/2004

CITY OF BANGOR,

Plaintiff

v.

PENOBSCOT COUNTY,

Defendant



FILED & ENTERED
SUPERIOR COURT

OCT 2 1 2004

PENOBSCOT COUNTY

)
)
)
)
)
)
)

DECISION AND
ORDER

NOV 4 2004

This matter is before the Court on the parties' cross-motions for summary judgment

pursuant to M.R. Civ. P. 56. Plaintiff, City of Bangor (herein "**Bangor**"), is seeking a

declaratory judgment stating that the Defendant, Penobscot County (herein the "**County**"), is

required to fund its regional 911 Emergency dispatch facility through fee-for-service agreements

with participating municipalities and cannot fund the dispatch facility through county taxes.

## Background

The County initiated enhanced 911 service in 1990 under the authority of 30-A M.R.S.A.

§ 453 (Supp. 2003), whereby all telephone calls from participating municipalities are directed to

dispatch facilities operated by the County. From 1997 to 2001 the County entered into fee-for-

service agreements, pursuant to 30-A M.R.S.A. § 107 with municipalities who chose to

participate in the regional dispatch. In 1997, the County invited Bangor to join the regional

dispatch facility and sent Bangor a signed Agreement. Bangor decided not to join, retaining its

own dispatch center. In 2001, the County began funding the regional dispatch through county

taxes and continues to do so. At least five other counties, including Lincoln, Oxford, Sagadahoc,

1

Somerset and Waldo Counties fund their centers through county taxes, but, like the County, do not provide services for all the communities in their respective counties. Cumberland, Knox and York Counties fund their centers through a combination of county taxes and contracts with individual communities. Bangor filed a Complaint on November 24, 2003 seeking a declaratory judgment as to the legality of the County's funding of its dispatch center through county taxes. Both sides filed motions for summary judgment with a joint statement of material facts.

## Discussion

A party is entitled to summary judgment when the record shows that there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); see also Darlings v. Ford Motor Co., 2003 ME 21, ¶ 14 817 A.2d 877, 879. Essentially the Court determines whether there is a genuine issue of material fact by comparing the parties' statements of material facts and corresponding record references. Corey v. Norman, Hanson & DeTroy, 1999 ME 196, ¶ 8, 742 A.2d 933, 938. Uncontroverted facts are accepted as true for the purpose of testing the propriety of summary judgment. Curtis v. Porter, 2001 ME 158, ¶ 8, 784 A.2d 18, 22. Since the parties concede that there are no genuine issues of material fact, this Court must decide whether the County may fund its regional dispatch center through county taxes as a matter of law.

### A.    Applicable Law

#### 1.    Legal Standard

This case requires the Court to interpret Maine statutes. When interpreting a statute, the main objective is to give effect to the Legislature's intent. To determine that intent, the Court looks first to the statute's plain meaning. If there is no ambiguity, then the Court need proceed no further. If, however, ambiguity exists, then the Court must look beyond that language to the

2

legislative history. McLaughlin v. Superintending Sch. Comm. of Lincolnville, 2003 ME 114, ¶ 13, 832 A.2d 782, 786. See also, State v. Bjorkaryd-Bradbury, 2002 ME 44, ¶ 9, 792 A.2d 1082, 1084; Lewiston Raceway, Inc. v. Maine State Harness Racing Comm'n, 593 A.2d 663, 665 (Me. 1991). The Court must consider the "whole statutory scheme of which the section at issue forms a part, so that a harmonious result, presumably the intent of the Legislature may be achieved." Ashe v. Enterprise Rent-A-Car, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159. Finally, a Court should avoid results that are absurd, inconsistent, unreasonable or illogical. International Paper Co. v. Bd. of Envtl. Prot., 629 A.2d 597, 599-600 (Me. 1993).

2. *30-A M.R.S.A. §§ 453, 107*

The authority of the counties is derived entirely from statute. See State v. Vallee, 12 A.2d 421, 429 (Me. 1940). Such authority can be conferred expressly or by clear implication. 30-A M.R.S.A. § 1351(2) (Supp. 2003). 30-A M.R.S.A. § 453 grants counties the power to establish communication centers as well as the power to provide certain services to municipalities. Section 453 states in pertinent part:

> Each county may establish a communications center, separate from any communications function of the sheriff's department and capable of serving the communication needs of the county and the municipalities which *may* wish to use the center. . . .
>
> The county commissioners, after consulting with the director or chief dispatcher, *may* enter into an agreement with a municipality under section 107 to provide specific communications for municipal law enforcement functions including dispatching of municipal units, in return for payment for these services.

Id. (emphasis added).

30-A M.R.S.A. § 107 grants county commissioners further power to provide services not already authorized or required of the counties elsewhere in Title 30-A. Section 107 states in pertinent part:

> In addition to any service authorized by or required of counties in this Title, the county commissioners of each county may develop and contract to provide any service that a municipality may perform. The county commissioners may develop such a service prior to executing a contract with a municipality but, unless otherwise provided for in this Title, may deliver the service only upon a contract with one or more municipalities or others as described in subsection 4.

Id.

> Section 107(4)(5) states:
>
> 4.    The county may provide services to municipalities and other public and private entities in the county or another county. Unless otherwise provided for in this Title, a county may not require municipalities or other entities to subscribe to, contract for or participate in any service under this section.
>
> 5.    The cost of developing and providing the service must be borne by those municipalities or other public or private entities using the service or by other means, but must not in any way be borne by the tax for which municipalities are assessed pursuant to section 706.

Id. at § 107(4)(5) (emphasis added).

Bangor argues that the statutes are clear and unambiguous. Section 453 allows commissioners to provide services to municipalities through agreements that fall under section 107. Bangor argues that section 107 is applicable to this situation, because, according to its interpretation of section 453, commissioners may only provide services through agreements under section 107. See 30-A M.R.S.A. § 453.

The County argues that the restrictions of section 107 do not apply to services provided under the authority of other sections of Title 30-A. The County points to the language in section 107 that states, "unless otherwise provided for in this Title, [the county commissioners] may deliver the services only upon a contract . . . ." 30-A M.R.S.A § 107. The County argues that the services in question here do not fall under section 107, because, due to section 453, such services are otherwise provided for in Title 30-A. As such, the County argues, section 107 does not require the County to use contracts in this case and is, therefore, not bound by the funding prohibitions of section 107(5). To this extent, the County is correct. A reading of the statute reveals that section 107, on its face, does not apply to county services under § 453, but only to services *not* otherwise provided for in Title 30-A.

The County goes on to argue that following Bangor's interpretation of sections 453 and 107 would lead to absurd, inconsistent, unreasonable or illogical results. It contends that if this Court required services provided for under section 453 to be bound by the funding limitation of section 107(5), then every service that counties provide to municipalities would have to be funded through individual contracts and not the countywide tax. The County is correct, a plain reading of section 107 reveals that it was not meant to be the sole provision governing the funding of county services to municipalities. However, the problem for the County arises when it attempts to interpret section 453.

The County argues that section 453 does not *require* commissioners to use section 107 contracts to fund "specific communications for law enforcement functions" under the statute. 30-A M.R.S.A. § 453. It argues that the word "may" in "[t]he county commissioner . . . *may* enter into an agreement with a municipality *under section 107* to provide specific communications . . . ." means that counties are not limited to only section 107 agreements to

5

provide funding.  Id. (emphasis added).  Finally, the County points to the other counties who have been using county taxes to fund their regional dispatch centers.

The County is correct when it argues that section 107 does not apply to provisions "otherwise provided for."  30-A M.R.S.A. 107.  Since section 453 grants the commissioner the authority it needs to deliver and fund the services in question here, section 107, on its face, is inapplicable.  However, the real issue in this case is whether the word "may" in the fourth paragraph of section 453 means that the commissioners are permitted to circumvent section 107 and use county taxes for the funding county services to municipalities under section 453.

There is no ambiguity in the statutes in this case.  The word "may" in section 453 does not mean, as the County argues, that county commissioners may choose among other unauthorized alternatives to provide services.  A plain reading of the statute reveals that the Legislature was simply granting commissioners the discretion to provide "specific communications for municipal law enforcement functions . . . ."  In other words, the word "may" is not referring the power to choose the method of delivery and funding of services, it is referring to the commissioner's power to choose whether to provide those services at all.  However, once the commissioner does choose to provide those services, an agreement governed by section 107 is the only available funding method.  The authority of the counties is derived entirely from statute.  See State v. Vallee, 12 A.2d 421, 429 (Me. 1940).  Such authority can be conferred expressly or by clear implication.  30-A M.R.S.A. § 1351(2) (Supp. 2003).  Allowing the commissioners the discretion to deliver and fund services using methods not prescribed by statute would be granting the commissioners more power than the Legislature intended.

The County's argument that this interpretation will yield "absurd, inconsistent, unreasonable or illogical results" is without merit.  This holding is limited only to those services

provided under section 453. While some counties will have to alter their funding schemes, section 107 is clear and is intended to protect those municipalities who choose not to take advantage of certain county services, as is their right. 30-A M.R.S.A. § 453 ("Each county may establish a communication center . . . capable of serving the communication needs of the county and the municipalities which may wish to use the center");[1] 30-A M.R.S.A. § 107(4) ("[A] county may not require municipalities or other entities to subscribe to, contract for or participate in any service under this section").

## Conclusion

While services authorized under section 453 would not otherwise fall under the limitations of section 107, because section 453 mandates that section 107 govern the agreements entered into with municipalities, section 107(5) and its prohibition on using county taxes is applicable to the funding scheme here.

Therefore the entry is:

Bangor's Motion for Summary Judgment **GRANTED**. The County's Motion for Summary Judgment **DENIED**.

DATED: October 21, 2004

_____
Justice, Maine Superior Court

---

[1] Note that the word "may" here is being used the same way as it is in section 453, i.e. to denote a party's discretion to not use county services. Following the County's reasoning, "may" here would mean that municipalities have the discretion to use the county communication center or other county services not provided for by the statute.

BANGOR CITY OF - PLAINTIFF
73 HARLOW STREET
BANGOR ME 04401
Attorney for: BANGOR CITY OF
NORMAN HEITMANN  - RETAINED 11/24/2003
OFFICE OF CODE ENFORCEMENT
73 HARLOW STREET
BANGOR ME 04401


Attorney for: BANGOR CITY OF
JOHN HAMER  - RETAINED 11/24/2003
OFFICE OF CODE ENFORCEMENT
73 HARLOW STREET
BANGOR ME 04401



vs
PENOBSCOT COUNTY - DEFENDANT
97 HAMMOND STREET
BANGOR ME 04401
Attorney for: PENOBSCOT COUNTY
JOHN MCCARTHY  - RETAINED 12/12/2003
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401

SUPERIOR COURT
PENOBSCOT, ss.
Docket No  BANSC-CV-2003-00215

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: OTHER STATUTORY ACTIONS
Filing Date: 11/24/2003

## Docket Events:

11/25/2003 FILING DOCUMENT - COMPLAINT FILED ON 11/24/2003
           COMPLAINT FOR DECLARATORY JUDGMENT

11/25/2003 Party(s):  BANGOR CITY OF
           ATTORNEY - RETAINED ENTERED ON 11/24/2003
           Plaintiff's Attorney: NORMAN HEITMANN

11/25/2003 Party(s):  BANGOR CITY OF
           ATTORNEY - RETAINED ENTERED ON 11/24/2003
           Plaintiff's Attorney: JOHN HAMER

11/25/2003 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 11/25/2003
           TO PLAINTIFF'S ATTORNEY.

12/01/2003 Party(s):  PENOBSCOT COUNTY
           SUMMONS/SERVICE - ACCEPTANCE OF SERVICE SERVED ON 11/26/2003
           AS TO DEFENDANT PENOBSCOT COUNTY BY MICHAEL P. FRIEDMAN, ESQ.

12/01/2003 Party(s):  PENOBSCOT COUNTY
           SUMMONS/SERVICE - ACCEPTANCE OF SERVICE FILED ON 12/01/2003

12/12/2003 Party(s):  PENOBSCOT COUNTY
           RESPONSIVE PLEADING - ANSWER FILED ON 12/12/2003
           BY DEFENDANT.

Printed on: 10/21/2004