STATE OF MAINE                                    SUPERIOR COURT

Sagadahoc, ss.                                    Docket No. CV-10-33

DWIGHT A. MOORE and
ANNE MARIE MOORE,

            Plaintiffs

                v.                        **ORDER AND JUDGMENT**

ERICKSON AND RALPH, INC.,
d/b/a/ RALPH'S HOME SALES,

and

M.M.H. PRESTIGE HOMES, INC.,

            Defendants

        This matter is before the court on the motion of Defendant M.M.H. Prestige

Homes, Inc. for summary judgment; the motion of Erickson and Ralph Inc. for summary

judgment; and the motion of Plaintiffs Dwight and Anne Marie Moore, motion to amend

the complaint.

                        BACKGROUND

        The undisputed facts of this case may be briefly summarized as follows:[1] On or

about September 16, 2003, Plaintiffs Dwight and Anne Marie Moore entered into an

agreement with Defendant Erickson and Ralph, Inc., d/b/a/ Ralph's Home Sales ("Ralph's

---

[1] The court notes that the Plaintiffs have filed numerous "qualified" statements in response
to Prestige's Statement of Material Facts. However, the majority of these statements do not
contain supporting record citations as required by M. R. Civ. P. 56(h)(2), therefore, the
court deems these facts admitted. *See* M. R. Civ. P. 56(h)(4); *see also Platz Assocs. v.
Finley,* 2009 ME 55, ¶ 18, 973 A.2d 743, 749. Similarly, many of the Plaintiffs' Additional
Statements of Material Fact do not contain supporting record citations, and therefore are
not considered in deciding these motions. M. R. Civ. P. 56(h)(2).

Homes") for a "Ralph's Homes Modular Package" for their property located at 19 Granite Ledge Road, Phippsburg, Maine. The package included, but was not limited to, a foundation, backfill, drainage, excavation, water line, sewer line, finish work, loom and seed, as well as a modular home built to plans and specifications provided by Defendant M.M.H. Prestige Homes, Inc. ("Prestige"). Ralph's Homes entered into a contract with Prestige under which Prestige would sell to Ralph's Homes a modular home to be delivered to the Phippsburg address.[2] Prestige was compensated for the home by Ralph's Homes, and was not paid directly by Plaintiffs. Prestige contends that the only parties to the home sale contract were Prestige and Ralph's Homes, while the Plaintiffs contend that, as the customers, they were also parties to the contract.

Prestige admits that the home sold to Ralph's Homes was customized for Plaintiffs, and that Prestige prepared floor plans, elevation plans, stair plans, and foundation plans specifically for the Plaintiffs' home. Some of these plans were stamped: "Issued for Construction Cannot Proceed without: Customer Approval . . . ," and were signed by Plaintiff Dwight Moore.

The contract between Ralph's Homes and Prestige stated that all site, foundation, and site finish work for the Phippsburg home would be completed by parties other than Prestige. Prestige did not construct the foundation for the Phippsburg home, nor did Prestige at any time complete maintenance work on the foundation. The construction of the foundation was completed prior to the delivery of the home.

The modular home arrived in Phippsburg on dates during December 2003 and January 2004. It came in four parts via truck from Prestige's facility in Sussex, New

---

[2] Generally, Prestige does not contract directly with consumers but instead sells its products through vendors like Ralph's Home. (Prestige S.M.F. ¶ 12.)

2

Brunswick. Prestige completed delivery of the home and was paid in full by Ralph's Home on January 13, 2004. The Plaintiffs and Ralph's Homes closed on the modular home package on March 4, 2004.

Plaintiffs were provided with Prestige's Home Owner's Manual that included a Warranty & Service Program Section that stated: "Your Prestige warranty guarantees all workmanship and materials used in the construction of your home." Additionally, according to the Performance Standards Section of the Manual, "Prestige Homes' warranty covers all workmanship and materials supplied by Prestige Homes for a period of 12 months from the date of possession." (P.A.S.M.F. ¶ 5; Prestige R.S.M.F. ¶ 5 (admitting the statement despite objections)[3]).

The Ralph's Homes Service Policy for Modular Homes also limited Ralph's Homes' warranty on the home to one year: from March 4, 2004 through March 5, 2005. (Ralph's S.M.F. ¶¶ 4-6.) The Service Policy was made a part of the contract through the Purchase and Sale Addendum that was initialed by the Plaintiffs. (*Id.*)

On March 25, 2004, Dwight Moore and Prestige construction supervisor, Norman Harding, completed a Warranty Inspection/Customer Orientation Form. This form, signed by both Mr. Moore and Mr. Harding, notes Plaintiffs numerous complaints of defects in the home, including a complaint regarding the defective roof. On or about January 18, 2005, the Plaintiffs communicated to Ralph's Homes that the foundation wall had cracked. The Plaintiffs admit to communicating with both Defendants about these defects over the course of the next five years. Plaintiffs were continually in contact with

---

[3] Prestige does not dispute, for the limited purpose of summary judgment, the existence of defects as set forth in Plaintiffs' Additional Statements of Material Fact, and the court views Plaintiffs' allegations of defects in a light most favorable to them.

3

both Defendants over the next five years about the remediation of the defects Plaintiffs asserted needed to be addressed.

On April 21, 2010, Plaintiffs filed the current complaint against the Defendants alleging that their failure to construct the home in a reasonable and workmanlike manner resulted in defects in the roof and foundation and caused injuries to the Plaintiffs. Specifically, the complaint states the following claims: Count I: Negligence; Count II: Breach of Warranty; Count III: Breach of Agreement; Count IV: Breach of Covenant of Good Faith and Fair Dealing; Count V: Unfair Trade Practice; Count VI: Breach of Warranties Under the Home Construction Act; and Count VII: Breach of Implied Warranty of Fitness.

On December 20, 2010, Prestige filed the pending motion for summary judgment. On January 6, 2011, the Plaintiffs filed the pending motion to amend the complaint to add a claim of fraud (Count VIII). On January 25, 2011, Defendant Ralph's Homes also filed a motion for summary judgment. The court addresses these motions below.

## DISCUSSION

I.      Motion to Amend the Complaint:

In the interests of finality and judicial economy, courts should rule on a motion to amend before considering a dispositive motion, such as a motion to dismiss or a motion for summary judgment. *See Sherbert v. Remmel*, 2006 ME 116, ¶8, 908 A.2d 622, 624; *Kelly v. Michaud's Ins. Agency*, 651 A.2d 345, 346 (Me. 1994).

After a responsive pleading is served, a plaintiff may amend its complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." M.R. Civ. P. 15(a); *see also Efstathiou v. Aspinquid*, Inc., 2008

4

ME 145, ¶ 21, 956 A.2d 110, 118. "Whether to allow a pleading amendment rests with the court's sound discretion." *Holden v. Weinschenk*, 1998 ME 185, ¶ 6, 715 A.2d 915, 917 (quoting *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 616 (Me. 1992)).

Courts should freely allow an amendment to a complaint except for bad faith, dilatory tactics, or undue delay resulting in prejudice to the opponent. *Longley v. Knapp*, 1998 ME 142, ¶ 19, 713 A.2d 939, 945; *see also* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.4 (2d ed. 1970). However, where "a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend." *See Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994).

The Plaintiffs' motion to amend seeks to add a claim of fraud to their complaint. Fraud occurs when a defendant:

> (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage.

*Efstathiou*, 2008 ME 145, ¶ 15, 956 A.2d at 116 (citing *St. Francis de Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 26, 818 A.2d 995, 1003). Therefore, "[p]rocedurally, a party seeking to amend its complaint to include a fraud count must provide 1) a description of the fraud with particularity in its motion to amend and 2) a draft order granting it permission to include the count of fraud." *Anderson v. Cigna Healthcare of Maine*, 2005 Me. Super. LEXIS 139 (Oct. 27, 2005) (citing M.R. Civ. P. 7(b)(3); M.R. Civ. P. 9(b)).

Here, the Plaintiffs' submitted amended fraud claim states:

Ralph's and/or Prestige made representations of material fact to the Plaintiffs on

5

numerous occasions that they were aware of the defects in the structure, that they (*sic*) were legitimate damage claims, that they had an obligation to make the necessary repairs, and that they would do so. (Am. Compl. ¶ 46.)

These representations of material facts by Ralph's and/or Prestige constituted false and material misrepresentations to Plaintiffs, and were made with the knowledge that they would not, and had no intent of, making the necessary repairs to Plaintiffs' structure. (Am. Compl. ¶ 47.)

Ralph's and/or Prestige false and material misrepresentations to Plaintiffs were made with knowledge of their falsity or in reckless disregard of whether they were true or false. (Am. Compl. ¶ 48.)

These false and material representations made by Ralph's and/or Prestige were made for the purpose of inducing Plaintiffs to act or defer action in reliance upon them, in that Plaintiffs reasonably believed Ralph's and/or Prestige would honor their obligations and make the repairs. (Am. Compl. ¶ 49.)

Plaintiffs justifiably relied upon the representations made by Ralph's and/or Prestige as being true and acted upon them or deferred action on them to their detriment. (Am. Compl. ¶ 50.)

The Plaintiffs have failed to plead fraud with particularity as required by M.R. Civ. P. 9(b). The Plaintiffs never specified who made the alleged misrepresentations, or the specific content of the misrepresentations. Although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally" when pleading fraud, the actual circumstances surrounding the allegation must be plead with particularity. M.R. Civ. P. 9(b); *see also Barnes v. McGough*, 623 A.2d 144, 146 (Me. 1993).

A distinct reason why the proposed fraud count would likely not survive a motion to dismiss is that the gravamen of the Plaintiffs' fraud allegations, appears to be that the Defendants made promises to remedy defects that they never intended to keep. Under Maine law, a damages claim for fraud requires misrepresentation as to an existing fact, and a breach of a promise to do something in the future cannot qualify, at least in the absence of some special relationship between the parties, which is not alleged. *See Boivin v. Jones*

6

& *Vining, Inc.,* 578 A.2d 187, 188-89 (Mc. 1990); *Shine v. Dodge,* 130 Me. 440, 443, 157 A. 318 (1931).

As the Plaintiffs have not alleged fraud with adequate particularity, and because their claim would likely not withstand a motion to dismiss, amendment would be futile, and their motion to amend the complaint is denied.

II. Motions for Summary Judgment

*A. Standard of Review*

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence, considered in the light most favorable to the non-moving party, indicates that no genuine issue of material fact is in dispute." *Blue Star Corp. v. CKF Props. LLC,* 2009 ME 101, ¶ 23, 980 A.2d 1270, 1276 (citing *Dyer v. Dep't of Transp.,* 2008 ME 106, ¶ 14, 951 A.2d 821, 825; *Stanley v. Hancock County Comm'rs,* 2004 ME 157, ¶ 13, 864 A.2d 169, 174); *see also* M. R. Civ. P. 56. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance Nat'l Indem. v. Knowles Indus. Serv.,* 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25.

A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright,* 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter,* 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22.

*B. Statute of Limitations*

7

The parties disagree about whether the Plaintiffs' claims are barred by the statute of limitations.

### 1. Maine's Uniform Commercial Code

Plaintiffs' contract and warranty claims are governed by the four-year statute of limitations under Maine's Uniform Commercial Code ("U.C.C.") which controls all "transactions in goods." *See* 11 M.R.S.A. § 2-102. The U.C.C. has a four-year statute of limitations for actions involving transactions in goods. *See* 11 M.R.S. § 2-725(1) ("An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.") According to the U.C.C.:

> [a] cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach.* A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
>
> A cause of action for personal injuries arising under this Article for breach of warranty occurs when the injury takes place and is governed by the limitation of action period under Title 14, section 752.

11 M.R.S. § 2-725(2) (emphasis added).

Here, the tender of delivery occurred no later than January 13, 2004. Therefore, under the U.C.C., the Plaintiffs should have filed their claims by January 13, 2008. However, both Defendants reduced the warranty period to one year as stated in the Prestige Home Owner's Manual and Ralph's Home Service Policy, resulting in a statute of limitations deadline of no later than March 5, 2005.[4] The complaint was not filed until

---

[4] Pursuant to the Ralph's Home Service Policy, its warranty ended on March 5, 2005. (Ralph's S.M.F. ¶¶ 4-6.) The Prestige warranty was valid for 12 months "from the date of

April 21, 2010. Accordingly, under either a one-year or a four-year statute of limitations, the Plaintiffs' contract and warranty claims are untimely.[5]

### 2. Maine's General Statute of Limitations

The Defendants also contend that the Plaintiffs' remaining claims are barred by Maine's standard six-year statute of limitations.

Under Maine law, a civil cause of action must be brought within six years of the date it accrued. 14 M.R.S. § 752 ("All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, . . . except as otherwise specially provided."). "The general test for determining when a cause of action accrues is when a plaintiff 'received a judicially recognizable injury.'" *Johnston v. Dow & Coulombe*, 686 A.2d 1064, 1065-66 (Me. 1996) (citing *Bozzuto v. Ouellette*, 408 A.2d 697, 699 (Me. 1979) (noting that the plaintiff's "ignorance of the defendant's misfeasance for about seven years does nothing by itself to prevent the running of the statute of limitations")). "[A] cause of action sounding in tort accrues when the plaintiff sustains harm to a protected interest." *Id.* at 1066 (citing *Chiapetta v. Clark Assocs.*, 521 A.2d 697, 699 (Me. 1987)); *see also McLaughlin v. Superintending Sch. Comm.*, 2003 ME 114, ¶ 22, 832 A.2d 782, 788 ("In other words, it accrues at 'the point at which a wrongful act produces an injury for which a potential plaintiff is entitled to seek judicial vindication.'") citing *Williams v. Ford Motor Co.*, 342 A.2d 712, 714 (Me. 1975)). "'When the Legislature does not give explicit

---

possession." (P.A.S.M.F. ¶ 5; Prestige R.S.M.F. ¶ 5.) As the delivery of the home was complete by January 13, 2004, (Ralph's S.M.F. ¶ 8.), the warranty expired on January 13, 2004.

[5] Similarly, Plaintiffs' Unfair Trade Practices Act claim is also untimely, as such a claim is derivative of the alleged contract claim. (Compl. ¶¶ 28-33.); *see also* 5 M.R.S. §§ 207, 213; 10 M.R.S. §§ 1487, 1490.

9

directions, 'definition of the time of accrual . . . remains a judicial function.'" *Dunelawn Owners' Ass'n v. Gendreau*, 2000 ME 94, ¶ 11, 750 A.2d 591, 595 (citing *Nevin v. Union Trust Co.*, 1999 ME 47, ¶ 24, 726 A.2d 694, 699).

For example, in *Johnston v. Dow & Coulombe, supra,* the Law Court found that a property owner's cause of action against a surveyor "accrued for purposes of the statute of limitations when the surveyors performed" their negligent survey. 686 A.2d at 1066. The Court concluded that, although at the time of the survey the plaintiffs "had not yet suffered the pecuniary loss of the quiet title action that would later be brought against them," they suffered their "injury at the time of the performance of the survey," and affirmed judgment in the surveyors' favor. *Johnston v. Dow & Coulombe*, 686 A.2d at 1065-66.

Similarly, in *Dunelawn Owners'Ass'n v. Gendreau*, , a condominium association and condominium owner sued the condominium developer for fire damages due to the negligent installation of electrical wiring. 2000 ME 94, ¶ 12, 750 A.2d at 595. The Law Court concluded that the plaintiffs' claims were barred by the statute of limitations because the claims "accrued either at the time that construction was completed . . . or at the time of purchase," because "it was at those times that [the defendant] breached a duty to, respectively, construct a condominium and convey a condominium unit free of material defects." *Id.* ¶ 12, 750 A.2d at 595-96 (citing *Andreoli v. John Henry Homes, Inc.*, 696 N.E.2d 1193, 1196 (Ill. App. Ct. 1998) (holding that "the time of accrual . . . governing a purchaser's suit against a builder to recover for latent defects in the purchaser's new house begins from the date when the house is conveyed"); *Jaworsky v. Frolich*, 850 P.2d 1052, 1054 (Okla. 1992) (applying rule that "the statute of limitations starts to run for breach of a construction contract . . . 'when the contract is completed'"); *Stephens v. Creel*, 429 So. 2d

278, 280 (Ala. 1983) (holding that breach of warranty of habitability is a contract claim that accrues when the defendant completes performance); *Calamel v. Ridge View Realty Corp.*, 115 A.D.2d 279, 496 N.Y.S.2d 154, 154 (N.Y. App. Div. 1985) ("In our view, plaintiffs' claim is essentially one for breach of contract and, therefore, could not accrue later than the date the contract was completed . . . .")).

Here, it is undisputed that both the foundation and Prestige's construction of the home were completed prior to the delivery date of January 13, 2004. (Prestige S.M.F. ¶¶ 8, 15.) It is also undisputed that the Plaintiffs and Ralph's Homes closed on the purchase of the home on March 4, 2004. (Ralph's Home S.M.F. ¶ 9.) Therefore, in order for the Plaintiffs' claims to be timely they had to be filed by no later than March 4, 2010. *Dunelawn*, 2000 ME 94, ¶ 12, 750 A.2d at 595. As the Plaintiffs failed to do so, their claims are barred by the statute of limitations.[6]

*1. Fraudulent Concealment*

The Plaintiffs argue that the statute of limitations was tolled due to the fraudulent misrepresentations of the Defendants pursuant to 14 M.R.S.A. § 859.[7] The court

---

[6] The Plaintiffs also argue that the contract was not completed because the repairs they requested were never accomplished. However, it is undisputed that the Plaintiffs entered into an agreement for the purchase of a modular home that was delivered on January 13, 2004, with a closing that took place on March 4, 2004. Therefore, the court concludes that the Defendants have established both the existence and "completion" of the contract. *See, e.g., Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044 ("The establishment of a contract requires that the parties mutually assent 'to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.'") (citing *Van Voorhees v. Dodge*, 679 A.2d 1077, 1080 (Me. 1996)).

[7] Title 14 M.R.S. § 859 states:

[i]f a person, liable to any action mentioned, fraudulently conceals the cause thereof

11

disagrees. "Section 859 extends the time for bringing an action by six years if the cause of action is fraudulently concealed, or the claim itself is grounded on fraud." *Harkness v. Fitzgerald*, 1997 ME 207, ¶ 6, 701 A.2d 370, 372 (citing *Akins v. Firstbank, N.A.*, 415 A.2d 567, 569 (Me. 1980)).

> In order for plaintiff[s] to claim the benefit of the statute, [they] must establish either: (1) that defendants actively concealed material facts from [them] and that [they] relied on their acts and statements to [their] detriment; or (2) that a special relationship existed between the parties that imposed a duty to disclose the cause of action, and the failure of defendants to honor that duty.

*Id.* (citing *H.E.P. Dev. Group, Inc., v. Nelson*, 606 A.2d 774, 775 (Me. 1992)).

The Plaintiffs suggest that although they had knowledge of the defects soon after delivery of the home, the Defendants misrepresented that they would fix the problems, knowing that they never intended to, in order to avoid their statutory and contractual warranties. The Plaintiffs maintain that they justifiably relied on these misrepresentations and did not pursue litigation until they realized that the Defendants had no intention of fixing the defects. They further allege that, in reliance on section 859, the statute of limitations was tolled until they discovered that the Defendants had no intention of following through with the repairs.

As already discussed, the Plaintiffs' causes of action accrued for purposes of the statute of limitations by January 13, 2004 as to Defendant Prestige, and by March 5, 2004 as to Defendant Ralph's Homes; the time of delivery and the contract closing date respectively. The Plaintiffs have not presented any issue of material fact that the

---

from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action, except as provided in section 3580 [governing fraudulent transfers as defined in sections 3575 and 3576].

12

Defendants actively concealed any cause of action, in fact, the communications between the parties regarding the defects indicate that the Plaintiffs were well aware of the defects.[8] *Harkness,* 1997 ME 207, ¶ 6, 701 A.2d at 372 , *see also Efstathiou,* 2008 ME 145, ¶ 18, 956 A.2d at 117 (noting that where the Plaintiff was aware of the "pertinent facts", she could not claim that the Defendants fraudulently concealed her cause of action). Accordingly, the court concludes that the Plaintiffs have failed to generate a genuine issue of material fact regarding their claim of fraudulent concealment.

### 2. Equitable Estoppel

The Plaintiffs also argue that the Defendants are estopped from invoking the statute of limitations because they continuously represented that they would repair the problems with the home.

"[E]quitable estoppel should be 'carefully and sparingly applied.'" *Northeast Harbor Golf Club, Inc. v. Harris,* 1999 ME 38, ¶ 23, 725 A.2d 1018, 1024-25 (quoting *Nuccio v. Nuccio,* 673 A.2d 1331, 1334 (Me. 1996)). If the elements of estoppel are present, "estoppel may be applied to prevent an otherwise valid affirmative defense of statute of limitations from successfully being raised." *Hanusek v. Southern Maine Medical Center,* 584 A.2d 634, 636 (Me. 1990).

To prove estoppel, a plaintiff must demonstrate that the defendant conducted itself in a "manner which actually induces the plaintiff not to take timely legal action on a claim," causing the plaintiff to rely on this conduct to its detriment by failing to "seek legal redress while the doors of the courthouse remain open to [it]." *Id.* "The acts of the plaintiff in reliance on the defendant's conduct, however, must be reasonable." *Id.* at 636-37 (citing

---

[8] The Plaintiffs have not alleged that a special relationship exists between the parties.

13

*City of Auburn v. Degrosseillers*, 578 A.2d 712, 714 (Me. 1990); *Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 106 (Me. 1984)).

The Plaintiffs argue that since the Defendants acknowledged and represented that they would repair the home's defects, they should not be able to assert a statute of limitations defense. Up to a point, the argument is valid. As to assurances made during the contractual warranty periods of one year and two years, the Plaintiffs might have a cognizable case for estoppel to prevent those limitations periods from being enforced against them.

However, the delay of five years is a different matter. As the court in *Hanusek v. Southern Maine Medical Center* noted of the facts in that case, "This is not the case of a misleading statement made shortly before the expiration of the limitations period prompting a brief delay in bringing suit." 584 A.2d 634, 636-37 (Me. 1990).[9] Based on the undisputed facts that the defects at issue surfaced within the first year after the home was delivered, the court finds that the delay of an additional five years is unreasonable as a matter of law. *See Hanusek v. Southern Maine Medical Center, supra.*

Moreover, in their statements of material fact the Plaintiffs have not shown how they intended to pursue legal action but were induced not to by the Defendants' actions.[10]

---

[9] The facts of *Hanusek* bear some resemblance to those here. Plaintiffs alleged that, immediately after the alleged medical malpractice occurred, a hospital nurse warned them against consulting an attorney about a possible claim, and that they refrained from pursuing a claim for several years as a result of that warning. The Law Court found the resulting forbearance for nearly three years to be unreasonable "as a matter of law." 584 A.2d at 637. Admittedly, the facts here are different—the Plaintiffs appear to rely on multiple assurances by Defendants that they would repair the defects—but the delay is almost twice as long.

[10] The Plaintiffs include copies of numerous e-mail exchanges between them and representatives of the Defendants, the last of which appears to date to April 2009, about a year before Plaintiffs filed suit. There is no apparent explanation for the further delay of

14

*See Northeast Harbor Golf Club, Inc. v. Harris,* 1999 ME 38, ¶ 23, 725 A.2d 1018, 1024-25 (quoting *Nuccio v. Nuccio,* 673 A.2d 1331, 1334 (Me. 1996)). Therefore, the court concludes that the Plaintiffs have failed to raise an issue of material fact with regard to estoppel.

For these reasons, the Defendants are entitled to judgment as a matter of law on the basis of the statute of limitations. Even assuming the six-year statute—the longest possible limitations period that Maine law provides for claims of this nature—is the governing period, the complaint was untimely filed.

## CONCLUSION

For the reasons stated, Plaintiffs' Motion to Amend the Complaint is DENIED. Defendant Prestige's Motion for Summary Judgment is hereby GRANTED. Defendant Ralph's Homes' Motion for Summary Judgment is hereby GRANTED.

Judgment on the complaint is hereby granted to the Defendants, with costs.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Decision and Order by reference in the docket.

Dated May 3, 2011

A. M. Horton, Justice

---

that year, and no specific evidence of any statements or actions by Defendants during that year that dissuaded Plaintiffs from filing. The six-year statute expired in 2010, so, even assuming the Plaintiffs could establish equitable estoppel as to the contractual warranty periods or the four-year U.C.C. period, there is simply no evidence on which to support an estoppel during 2009-10.